# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1899.

WELLS *et al. v.* MAYOR AND ALDERMEN OF THE
CITY OF SAVANNAH *et al.*

1. Even if the municipal authorities of any city in this State had, prior to
the constitution of 1877, the power by contract with any of its citizens to
perpetually exempt property from taxation, before a claim to such an
exemption could be seriously entertained, the existence of such a con-
tract would have to be clearly and specifically shown. The record in this
case fails to disclose any contract between the City of Savannah and the
plaintiffs, or any of their predecessors in title to the land claimed to be
exempt from municipal taxation. Such a contract will not be implied
merely from the fact that the marshal of the city customarily announced,
when lands of like character were exposed for public sale, that the same
were not subject to city taxes, nor from the fact that it was generally un-
derstood by the public that such property would be so exempt, nor from
the further fact that for many years the city never undertook to exercise
over this class of property its powers of taxation.
2. All other questions presented by the record in this case were specifically
adjudicated by this court in its decision therein as reported in 87 *Ga.* 397.

Argued February 8, — Decided March 17, 1899.

Equitable petition. Before Judge Falligant. Chatham
superior court. March term, 1898.

*Saussy & Saussy*, for plaintiffs.
*Samuel B. Adams*, for defendants.

LEWIS, J. Over a hundred years ago, the municipal au-
thorities of the City of Savannah, by ordinances duly passed,

1

resolved to expose to public sale certain lands, known as "commons," then owned by the city. One scheme provided for in these ordinances was to offer the lands for sale on what was known as the "ground-rent" plan. The purchaser who elected to buy upon this plan was to pay quarterly a stipulated amount as rent for the land sold to him, and as long as such payments were continued he was to have the right of peaceful occupation and use of the premises forever. It is this class of property, now held by the successors in title to the original purchasers from the city, that the plaintiffs claim to be exempt from municipal taxation. There are two controlling questions presented by the record: First, have the plaintiffs such an interest in the title to the property as will subject them to the payment of taxes thereon? Second, has this property ever been perpetually exempted from the assessment of municipal taxes by virtue of any contract between the city and the original purchasers therefrom? The first of these questions was specifically adjudicated adversely to the plaintiffs in error when this case was before this court at the March term, 1891. 87 *Ga.* 397. We think the decision then rendered also disposed of the second question above mentioned, it being necessarily involved in the case; but inasmuch as this court did not enter upon a specific discussion as to the contractual relations which the plaintiffs claim exist between themselves and the City of Savannah, and as their learned counsel, in his argument before us, insisted that at the last hearing of the case in the court below much additional evidence was introduced which strengthened his position that the city had by express contract exempted this property from taxation, we will briefly present the views which we entertain concerning this issue.

We are aware of no act passed by the State legislature that has ever conferred upon the City of Savannah the power to exempt from taxation any property owned by its citizens. There is respectable and weighty authority to the effect that a legislative body, in the exercise of the sovereign powers of a State, has no inherent right, upon any consideration, to enact a law perpetually exempting any particular species of property from the burden of taxation. Some of the decisions to which we refer

are based upon the reasoning that, from the very nature of legislative bodies, one legislature can not fix a limit to the power of another and subsequent one. Other authorities have treated such exemptions by legislative enactment as privileges or bounties only, revocable at the will of the legislature. It is unimportant, however, to go into a consideration of the many judicial expressions of opinion to be found upon this subject, among which may be cited the remarks of McCay, J., in *State of Georgia* v. *Georgia Railroad & Banking Co.*, 54 *Ga.* 424, and the discussion of the question by Judge Bleckley in *Atlantic & Gulf R. R. Co.* v. *State of Georgia*, 55 *Ga.* 312. The Federal Supreme Court seems thoroughly committed to the proposition that a State is bound by an act of its legislature which, for a good or valuable consideration, perpetually exempts any particular class of property from taxation. In the case of Murray v. Charleston, 96 U. S. 432, it was held that the clause in the constitution of the United States, providing that "no State shall pass a law impairing the obligation of contracts, is a limitation upon the taxing power of a State, as well as upon all its legislation, whatever form it may assume." See, also, Central Railroad & Banking Co. v. Georgia, 92 U. S. 665; Salt Company v. East Saginaw, 13 Wall. 376; State of New Jersey v. Wilson, 7 Cranch, 164; Cooley on Taxation, p. 66.

In the view we take of this case, we find it unnecessary to pass upon the power of a State government, or of its subordinate branches, to enact such legislation or make such contracts with its citizens. We think there can be no sort of question that when such an exemption is claimed by any citizen of the government, it is incumbent upon him to clearly show the existence of an express contract, unambiguous and definite in creating by its terms the exemption claimed. Such a contract can not be implied, and if there is any doubt concerning its existence, or the exact and true meaning of its stipulations, the doubt ought always to be resolved in favor of the government upon which has been conferred the right to exercise this sovereign power. In this connection, we quote the following pertinent extract from the opinion of Mr. Justice Swayne in the case of Tucker v. Ferguson, 22 Wall. 575, as laying down the cor-

rect rule upon this subject: "The taxing power is vital to the functions of government. It helps to sustain the social compact and to give it efficacy. It is intended to promote the general welfare. It reaches the interests of every member of the community. It may be restrained by contract in special cases for the public good, where such contracts are not forbidden. But the contract must be shown to exist. There is no presumption in its favor. Every reasonable doubt should be resolved against it. Where it exists it is to be rigidly scrutinized, and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require. It is in derogation of public right, and narrows a trust created for the good of all."

Was such a contract shown in the present case? With the view of determining whether or not there was, we have naturally looked to the official action taken by the governing body of the city, either in its ordinances or resolutions providing for the plan upon which the sales were to be made and the consequences and effect thereof, or in its deed of conveyance to the purchaser. Upon examining the various ordinances set out in the record, we fail to find any reference whatever to the matter of exempting this property from taxation; and instead of finding any stipulation to that effect in the form of deed invariably made by the city to the various purchasers, there appears a clause directly negativing the idea that the city ever intended to grant a perpetual exemption of this property from the burden of taxation. In each instance, it was recited in the deed given to the purchaser that the conveyance of the city was made, and the rights of the purchaser thereunder were conferred, "subject only to such assessments and burthens as shall be in common with other lot-holders in the said city." The term "assessment" is often used as a synonym of "taxes." Indeed, one of the definitions of this term given by Webster is "a tax." But even if this word, as used in the deed, does not necessarily refer to taxation, the word "burthen," which is also therein employed, is certainly sufficiently comprehensive to include municipal taxes. Taken all together, the language adopted is clearly broad enough to embrace every burden then existing or

which might thereafter be lawfully imposed upon other land-owners in the city. The deed was signed by both parties. Here, then, is a specific written agreement made between the parties to the contract relating to the sale of property by the city, whereby it is expressly declared that the property shall be held by the purchaser (and, of course, by his assigns) subject to any burden which might be borne in common by the holders of other lots in the city, necessarily including that of municipal taxation.

Plaintiffs in error contend, however, that the contract they insist upon is evidenced sufficiently by the conduct of the municipal officers at the time the sales by the city took place. It was shown that when lots were put up for sale, the city marshal publicly announced that they would not be subject to city taxes; that this was generally understood by the city at large, and that for nearly a hundred years after these sales first began the municipal authorities failed to tax the lands, and in various ordinances afterwards passed these ground-rent lands were exempted. The effect of these ordinances was merely to grant an exemption from taxes for the particular years to which they related. Mere nonuser by a government of its power to levy a tax, it matters not for how long it continued, can never be construed into a forfeiture of the power. This question was directly passed upon by this court when the case was here before. As to this point, Chief Justice Bleckley said: "Whatever the expectation of purchasers, or the unbroken practice of the city hitherto may have been, the mandate of the constitution of 1877 is to tax all property, save that expressly exempted by the legislature under constitutional authority, if any is taxed. That this mandate may have heretofore been disregarded, is no reason why it should not be obeyed now."

There is an absolute want of any testimony in the record showing that the Mayor and Aldermen of the City of Savannah, by ordinance, resolution, or official action of any sort, ever authorized the marshal to make the public announcement above referred to, in offering for sale the city's property. The effort to create a contract by such proof is simply an attempt to engraft upon a written instrument by parol a stipulation

contrary to the terms of the writing itself. After the oral announcement made by the marshal, the city made its deed to the purchaser, the terms of which expressly negatived the assurance given by that officer to the public. Under no rule of law could such parol evidence be allowed to vary the terms of a written contract. Besides all this, we fail to find in the record any testimony showing that these particular plaintiffs, or any of their predecessors in title, bought any of the lots in question under the impression that the same would be exempt from taxes. Indeed, it is not shown that any of these lots were purchased at a sale at which the marshal made such an announcement as that above referred to. The evidence simply goes to the extent of showing what was his custom in this particular, and what was the general impression of the public in regard to the matter. For aught that appears, those who actually bought at these sales were fully advised as to the truth with reference thereto, if not prior to the sale, at least before they complied with their bids and accepted the city's conveyance of the lots purchased by them.

Our conclusion therefore is, that even if the City of Savannah had the power claimed for it, the record utterly fails to make it appear that its authorities ever attempted to exercise such power. *Judgment affirmed. All the Justices concurring.*