## SAVANNAH, THUNDERBOLT AND ISLE OF HOPE RAILWAY *v.* MAYOR AND ALDERMEN OF SAVANNAH.

The municipal authorities of the City of Savannah had power, under the charter of the city and the second proviso of section 2180 of the Civil Code, to levy and collect an occupation or business tax from street-railroad companies for the use and occupation of the city streets by their tracks and cars, when such companies' principal business was the transportation of passengers from points within the city limits to other like points.

The facts of this case differ from those of the case of *City Council of Augusta* v. *Central Railroad*, 78 *Ga.* 119.

Argued March 21, Reargued July 17, — Decided November 26, 1900.

Petition for injunction. Before Judge Falligant. Chatham superior court. February 19, 1900.

*Barrow & Barrow* and *Joseph B. Cumming*, for plaintiff.
*Samuel B. Adams*, for defendant.

SIMMONS, C. J. The municipal authorities of the City of Savannah, by a proper ordinance, levied a business or privilege tax upon street-railroad companies doing business within the limits of the city. The plaintiff below, being such a company, filed an equitable petition against the municipal authorities, alleging that the city had no power or authority to levy such taxes, and that the same were therefore illegal and void. Upon the hearing the judge refused the injunction, and the petitioner excepted.

The charter of the City of Savannah contains the following clause: "They [the municipal authorities] are also hereby vested with full power and authority to make such assessments and lay such taxes on the inhabitants of said city, . . and those who transact or offer to transact business therein, as said corporate authorities may deem expedient for the safety, benefit, convenience, and advantage of said city, and may enforce the payment of such assessments and taxes in such manner as said mayor and aldermen may prescribe." Code of 1882, § 4847. This is about as broad a power as the English language can express to tax businesses and occupations. There can be no doubt of the intention of the legislature to confer this power, and there can be no doubt that the city authorities had the power to impose the tax here complained of, unless the decision in the case of *City Council of Augusta* v. *Central Railroad*, 78 *Ga.* 119, rules to the contrary. It is claimed by the

plaintiff in error that as street-railroads were, by the act of 1889 (Acts 1889, p. 36), put under the same tax act as steam and commercial railroads, they are brought within the construction put upon the tax act of 1874 in the *Augusta* case.    It is claimed that, under that case, the municipal authorities had no power to levy or collect an occupation tax upon street-railroad companies; that the charter of the City of Augusta contained substantially the same provisions as to the taxation of occupations as does that of the City of Savannah; and that when this court decided that the municipal authorities of Augusta had no authority to levy a business tax upon the Central Railroad and the other two railroad companies involved in that case, the question was closed so far as concerns the right of the city to impose an occupation tax upon the railroad company.    We do not agree with this contention.    The opinion in the *Augusta* case, which is the decision of the court, shows that the ruling made applied only to what may be termed a commercial railroad company,—one whose general business is not carried on within the city.    The State, by the act of 1874, reserved the exclusive right to collect taxes from railroad companies on the property owned and used in connection with their business, and a city had no authority to impose a tax upon such property.    Nor could a city, under the case just cited, impose a business or occupation tax on a railroad company which, under authority of its charter, merely transported freight and passengers to and from the city; for such a tax could be used to work a practical repeal to the charter of the company. Where, however, a street-railroad company does not transport freight or passengers to and from the city as the beginning or end of the route, but engages in transportation from one point within the city to another point within the city, it enters into a general business within the city and is properly taxable by the municipality.    And so if a street-railroad company combine the two businesses, as was done by the company in the present case, so as to transport freight or passengers from the city to points beyond or from such points to a point within the city, and also to transport freight or passengers from one part of the city to another, then such company, though it might not be subject to a city tax on its extra-municipal business, may be taxed by the city on the business carried on exclusively within the city limits.    This principle was recognized in the *Augusta* case; for it is there stated that "if a railroad com-

pany, which is a corporation, should carry on a business in the City of Augusta such as warehouseman, broker, drayage or commission business, etc., it would be liable to be taxed as any other person carrying on a like business." It is argued that one of the railroad companies declared in the *Augusta* case to be exempt had in this State but one or two miles of track, nearly all of which lay within the City of Augusta. Conceding this to be true, the case is still vastly different from the present one; for the company in question was engaged in transportation to and from Augusta and points in an adjoining State, and did not enter into the business of transporting freight or passengers from any point within Augusta's limits to any other such point.

In the present case the record discloses that the street-railroad company actually occupies with its cars and tracks the streets of the City of Savannah, and that it transports passengers from point to point within the city and charges toll therefor. It occupies and uses the streets as much as any hack or omnibus line would do,— indeed much more. It is well settled that the city has authority to charge these latter companies for the privilege of carrying on their businesses within its limits, and we see no reason why a street-railroad company should be held to stand upon a different footing. It was argued by counsel for the plaintiff in error, that while the power 'given the city to tax occupations was very broad, it was not universal; that inasmuch as the State itself had never levied a business tax upon railroad companies, it was not the intention, in granting the charter of the City of Savannah, to give the city authorities power to levy such a tax. In reply to this argument it is suffi-· cient to say that there are a great many businesses and occupations upon which the State has never levied a business tax but which are nevertheless taxable by cities. Thus the State has never levied a business tax upon merchants, blacksmiths, those who run omnibus or hack lines, or those in various other occupations which might be mentioned; yet, under the authority given to municipalities to impose occupation taxes, such taxes have been generally, we might almost say universally, levied upon all businesses within the municipal limits. While the taxation of street-railroad companies may not have been in the mind of the legislature when it granted to the City of Savannah "full power and authority to make such assess-. ments and lay such taxes on the inhabitants of said city, . . . and;

those who transact or offer to transact business therein," the power granted is amply sufficient to cover such taxation. We suppose that when this charter was granted to the City of Savannah there were no such companies in this country as the present plaintiff in error, but the power given is sufficient to embrace any new business or occupation that might arise in the rapid commercial and business growth of the country. Admitting for the sake of the argument the soundness of the plaintiff's contention as to the force and effect of the *Augusta* case, 78 *Ga.* 119, we would still hold that under the act of 1894 (now section 2180 of the Civil Code) the city authorities had power to levy an occupation or privilege tax upon this plaintiff in error. The record discloses that the company was incorporated under the act just cited. In the act and in the code section is a proviso which declares that all street-railroad companies incorporated thereunder "shall be subject to all just and reasonable rules and regulations by the corporate authorities and liable for all assessments and other lawful burdens that may be imposed upon them from time to time." As before remarked, the charter of the city gives it ample power to levy and collect a tax upon the business of street-railroad companies. The tax is therefore within the terms "assessments and other lawful burdens" imposed upon them. In the case of *Home Ins. Co.* v. *Augusta,* 50 *Ga.* 530, this court, in discussing a provision of the charter of the City of Augusta which authorized the municipality "to make such assessments on the inhabitants of Augusta or those who hold taxable property within the same as may seem expedient," said: "What is the meaning of the words 'assessments on the inhabitants?' It certainly authorizes a tax on property. Is it limited to that? If so, why? Businesses, occupations, and professions are as equally the subject of taxation as property, and have been as regularly taxed as any real or personal property. Cooley's Const. Lim. 479. If the 'assessment' is not limited to the person, such as a capitation or poll tax, what is there to confine it to any one subject-matter of taxation? It has always been the rule of the legislature of this State to assess a tax on property, on business, and also a capitation tax; and when taxation is referred to, the power to 'make assessments' includes the power to assess all three, unless there be some other provision to limit it. If it does not extend to the power to levy a tax on business, etc., then it would, in this case, be restric-

ted altogether to property." See also *Wells* v. *Savannah*, 107 *Ga.* 4; *Mutual Reserve Asso.* v. *Augusta*, 109 *Ga.* 73. For these reasons we think that when the legislature extended to street-rail-- roads the method of taxation which had theretofore been applied to commercial railroads, and, at a time subsequent to that of the decision in the *Augusta* case, inserted the above-quoted proviso as to liability to assessments and other lawful burdens, this was a modification of that decision, or a refusal to extend it to street-railroads, even if the decision could otherwise be held to embrace them.

After much reflection and study of this important case, we have come to the conclusion that there was no error in holding that street-railroad companies are liable under the law for the business tax imposed by the city, and that there was no error in refusing the injunction.

*Judgment affirmed.   All the Justices concurring.*