THE STATE ex rel. MAX ASOTSKY and FRANK HILMES v. CHARLES W. REGAN, City Clerk of Kansas City.—298 S. W. 747.

Division Two, September 27, 1927.

**1. MANDAMUS: Judgment on Pleadings.** In an original mandamus in this court, upon the filing by relators of a motion for judgment on the pleadings, only the facts as admitted and alleged in the return are for consideration in determining whether the permanent writ should issue.

**2. REFERENDUM: Unconstitutional Ordinance.** If the ordinance which relators ask the court to compel the city to summit to a referendum vote is unconstitutional, or void for any other reason, that fact would be a complete defense to the mandamus suit; and if the claim of the relators is based upon the theory only that the ordinance is unconstitutional, relief by mandamus to compel its submission to a referendum vote would have to be denied; for the court will not impose upon the city the burden and expense of submitting to a vote an ordinance which would be of no effect if adopted.

**3. ——: Emergency Measure: Judicial Question.** A declaration by the legislative body which passes an act that it is an emergency measure does not make it such, but it is for a court in a judicial proceeding to determine

whether the act or ordinance is in fact an emergency measure within the meaning of the Constitution or charter which authorizes it.

**4. REFERENDUM: Emergency Measure: Occupation Tax: Cigarettes: Assessment.** Under the Charter of Kansas City declaring that "any ordinance fixing any tax rate or assessment" is an emergency measure, and shall take effect immediately upon its passage, and shall not be submitted to a referendum vote, an ordinance assessing a tax of twenty per cent on the retail price of cigarettes in packages is an emergency measure, and cannot be submitted to referendum vote. The words "any tax rate or assessment" cannot be limited to an ordinance imposing an annual tax rate upon property; the word "assessment" must also be considered, and it implies a mode of imposing a tax and proceedings for raising money by the exercise of the power of taxation; and when all the words declaring that "an ordinance fixing any tax rate or assessment" shall be an emergency measure are considered, they mean that an ordinance fixing an occupation tax, or an ordinance imposing an annual tax on property, is an emergency measure.

**5. ———: ———: ———: Expediency.** The court will not construe a law by its view of its expediency, but it can take that feature into consideration in an attempt to ascertain what was in the legislative mind. A city would be in severe financial straits if every ordinance imposing an occupation tax could be referred to a vote of the people; and in considering whether any ordinance "fixing any tax or assessment" is subject to referendum vote, a bad ordinance stands on the same footing as a good one.

**6. TAXATION: Assessment.** The word "assessment" includes the whole legislative mode of imposing a tax. It embraces all the proceedings for raising money by the exercise of the power of taxation from their inception to their conclusion. As commonly employed, an assessment consists of two processes, namely, the listing of persons and property to be taxed, and the estimating of the sums which are to be the guide to an apportionment of the tax between them.

---

Corpus Juris-Cyc. References: **Assessment,** 5 C. J., Section 2, p. 817, n. 5. **Constitutional Law,** 12 C. J., Section 390, p. 891, n. 75. **Mandamus,** 38 C. J., Section 80, p. 604, n. 15. **Municipal Corporations,** 43 C. J., Section 314, p. 299, n. 81; Section 924, p. 576, n. 15; Section 953, p. 586, n. 36. **Statutes,** 36 Cyc., p. 1111, n. 60.

Mandamus.

ALTERNATIVE WRIT DISCHARGED.

*R. R. Brewster, Frank W. McAllister* and *James P. Aylward* for relator.

(1)   Under the Charter of Kansas City, the city clerk, in receiving and filing notices of referendum petitions in his office, acts in a ministerial capacity, and has no discretion with reference to receiving and filing said notices of referendum. Secs. 430 and 15, Charter; State ex rel. v. Roach, 230 Mo. 445; State ex rel. v. Carter, 257 Mo. 77; State ex rel. Stokes v. Roach, 190 S. W. 278. An ordinance requiring the payment of a one dollar registration fee, as a condition precedent to the carrying on of a business in the city, and levying an occupational

stamp tax of twenty per cent on the retail sales price of cigarettes in packages sold in the conduct of such business, is not an emergency measure or ordinance "fixing any tax rate or assessment," within the meaning of that phrase used in the charter. Sec. 15, Art. 2, Article 12, and Sec. 87, Art. 4, Charter; Book v. Earl, 87 Mo. 251; State ex rel. v. Jaudon, 286 Mo. 191; Missouri Constitution, Art. X, sec. 4; City of Kansas v. Railroad Co., 81 Mo. 294; State ex rel. Koeln v. Lesser, 237 Mo. 318; Brown-Forman Company v. Kentucky, 217 U. S. 571, 54 Law Ed. 886; Kansas City v. Richardson, 90 Mo. App. 456; State ex rel. Thompkins v. Shipman, 290 Mo. 75; Wire Company v. Woolbrink, 275 Mo. 339; State ex rel. Tax Commission v. Crawford, 303 Mo. 52; State v. Seebold, 192 Mo. 720; State v. Dixman, 162 Mo. 1; State v. Distilling Company, 236 Mo. 219; Valle v. Fargo, 1 Mo. App. 344; Commerce Trust Company v. Lot Co. & Johnson, 208 Mo. App. 265; Webb v. Bidwell, 15 Minn. 483; Naylor et al. v. Board of Education, 288 S. W. 692; Shropshire v. Commission Farm Credit Co., 266 S. W. 614; People v. Noglel, 1 Cal. 232, 52 Am. Dec. 312. (3) The council cannot destroy the right of referendum, by attaching to an ordinance a pretended emergency clause. State ex rel. Westhues v. Sullivan, 283 Mo. 547; Fahey v. Hackman, 291 Mo. 381; State ex rel. v. Carter, 257 Mo. 52; State ex rel. Pollock v. Becker, 289 Mo. 660. (4) The ordinance under consideration permitting retail dealers of cigarettes in Kansas City an allowance of ten per cent discount on each tax stamp purchased from the city, and to receive a ten per cent profit out of such public funds on the amount of tax required to be paid by the consumer, is unconstitutional, null and void because the tax thereby attempted to be levied is not wholly laid for public purposes. Kawk v. Drainage District, 248 Mo. 384; State ex rel. v. Zeigenhein, 144 Mo. 289; State ex rel. v. Switzler, 143 Mo. 287; State ex rel. v. St. Louis, 216 Mo. 47, 90. (5) An ordinance levying a twenty per cent occupation stamp tax on cigarettes sold in packages, and excluding from such tax other cigarette tobacco, cigars, chewing tobacco, and all other forms of tobacco, tobacco products and substitutes, is unreasonable, arbitrary, oppressive, and violates Section 3, Article X, of the Constitution of Missouri, requiring uniformity in taxation, and violates Article XIV, Section 1, of the Amendments to the Constitution of the United States, in that it deprives relators of their liberty and property without due process of law, and denies to them the equal protection of the laws. Gulf, C. & S. F. Railroad Co. v. Ellis, 165 U. S. 150, 41 Law Ed. 666; State v. Loomis, 115 Mo. 307; Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 33 Law Ed. 892.

*John T. Barker, E. F. Halstead* and *Marcy K. Brown, Jr.,* for respondent.

(1)  The ordinance is an emergency ordinance and immune from the referendum.  The city clerk properly refused to accept referendum petitions asking a reference of such emergency ordinance, as he was compelled to assume the ordinance was what it purported to be, an emergency ordinance.  Sec. 15, Art. II, Charter; State ex rel. v. Gordon, 251 Mo. 311; State ex rel. v. Becker, 289 Mo. 660; State ex rel. v. Sullivan, 283 Mo. 547; State ex rel. v. Roach, 190 S. W. 277; State ex rel. v. Graham, 257 Mo. 52; Fahey v. Hackmann, 291 Mo. 351; State ex rel. v. Kimmel, 256 Mo. 643; State ex rel. v. Williams, 232 Mo. 71.  (2)  The ordinance is one fixing a tax rate or assessment within the meaning of the charter, and became effective upon its passage and approval, and is not subject to the referendum provisions of the charter.  Sec. 15, Art. II, Charter; Sec. 2, Art. X, Constitution of Missouri; Clause 1, Sec. 1, Charter; 26 R. C. L. 13, 34; Sec. 8926, R. S. 1919; State ex rel. v. Jost, 265 Mo. 84.  (3)  The imposition of an occupation tax on retail dealers in cigarettes does not offend any constitutional provision.  Clause 2, sec. 1, Charter; Clause 57, sec. 1, Charter; St. Charles ex rel. v. Schulte, 305 Mo. 124; Viquesney v. Kansas City, 305 Mo. 488; Gundling v. Chicago, 177 U. S. 183; Insurance Co. v. Chorn, 274 Mo. 129; Theater Co. v. Chicago, 228 U. S. 69; Machine Co. v. Brickell, 233 U. S. 315; Oil Co. v. Texas, 217 U. S. 126; Bowman v. Oil Co., 256 U. S. 649.  (4)  If the ordinance is an excepted one and immune from the referendum, no reason exists for compelling the city clerk to file same.  Mandamus is never a proper remedy where it can serve no useful purpose.  State ex rel. v. Draper, 50 Mo. 28; 26 Cyc. 147.

WHITE, J.—The relators filed their petition in this court praying for a writ of mandamus to compel the respondent to receive a notice, as Clerk of the City of Kansas City, of a petition, signed by a number of citizens of that city, of their intention to cause to be circulated a referendum petition for the purpose of putting into effect a referendum vote upon an ordinance passed by the City Council of Kansas City.

Our alternative writ was issued upon the filing of such petition and upon that writ respondent filed his return.

On May 18, 1927, the relators filed a motion for judgment on the pleadings so that we have for consideration only the facts as admitted and alleged in the return to determine whether the permanent writ should be issued.

The admitted facts are as follows:

The relators are taxpayers in the city of Kansas City; the relator Max Asotsky is and was at all times a registered and qualified voter in Kansas City and a duly licensed merchant, engaged in the retail

sale of drug sundries, tobacco and cigarettes; the relator Frank Hilmes is and was at all times a taxpayer and a registered and qualified voter in the said city, and they bring this action on behalf of themselves and more than one hundred other registered voters of Kansas City similarly situated.

The City Council, on April 11, 1927, enacted an ordinance amending Ordinance No. 38141, entitled, "An ordinance providing for the regulation and licensing of occupations, callings and trades and fixing penalties for the violation of same," as amended by various ordinances mentioned.

Section 1 of the ordinance contains a new section, 3-H, as follows:

"Section 3-H. Every person, firm or corporation engaged in the retail business of selling cigarettes or offering or displaying the same for sale within the city, shall procure a license therefor, and at the time such license is issued, shall pay to the Commissioner of Licenses the sum of one dollar as a registration fee, and in addition thereto, every such person, firm or corporation, engaged in said business, shall pay an occupation tax in an amount equal to twenty per cent of the retail sales price (exclusive of tax) of each package of cigarettes so sold, offered or displayed for sale within the city. Said tax shall be paid and the stamps hereinafter provided for affixed by the person, firm or corporation selling such cigarettes or displaying or offering the same for sale, after the same shall have come to rest in this city and before being displayed or offered for sale by such retailer in this city; provided nothing in this ordinance shall be construed to require a distributor or dealer to fix the retail price, or construed to require any retailer to sell at any particular price, but the amount of stamps affixed at time of sale shall in no event be less than twenty per cent of the price at which the retail sale is made."

Section 2 of the ordinance declares it to be an emergency measure within the meaning of the Charter of Kansas City, to become effective immediately upon its passage.

The relators claim their right to cause a submission of this ordinance to a referendum vote under Section 15 of Article II of the new charter, adopted February 24, 1925, as follows:

"Section 15. *Ordinances: When Effective.* Emergency measures shall take effect immediately upon their passage. An emergency measure is any ordinance passed by the affirmative vote of six members of the council for the immediate preservation of the public peace, property, health, safety or morals, in which the emergency is set forth and defined in a preamble thereto; any ordinance calling any election, or providing for the submission of any proposal to the people; any ordinance making an appropriation for the payment of principal or interest of the public debt, or for current expenses of the city government; any general appropriation ordinance; any ordinance

fixing any tax rate or assessment; or any ordinance relating to any public improvement to be paid for by special assessment. No ordinance granting, enlarging or affecting any franchise or amending or repealing any ordinance adopted by the people under the initiative shall be an emergency measure.

''All other ordinances shall take effect ten days after the date of their passage, unless a later date therefor be indicated therein; provided, however, that if within ten days after the passage thereof there be filed with the city clerk a notice signed by not less than one hundred registered voters of the city stating the intention of such registered voters to cause referendum petitions to be circulated to submit any such ordinance, or any part thereof, to the electors, such ordinance shall, subject to the provisions of this charter relating to the referendum, take effect forty days from the date of its passage unless a later effective date be fixed in such ordinance.''

The petition then sets out the ordinances regulating the method by which an ordinance enacted by the city council may be referred, and alleges the facts which bring the relators within the terms of those requirements, and that the relators have complied with all of the requirements of the charter and ordinances to have the ordinance submitted to a referendum vote.

The return of the respondent admits all those facts and asserts that the ordinance which the relators seek to have referred is not referable under the Charter of Kansas City, and prays to have the alternative writ quashed and the proceedings dismissed.

I.   Besides claiming that the ordinance in question is a proper subject of referendum under the charter and ordinances of Kansas City, the relators contend that it is unconstitutional, and invalid for certain other reasons. If the ordinance were in fact unconstitutional, or was void for any other reason, that would be a complete defense to this action. We would not impose upon Kansas City the burden and expense of submitting to a vote an ordinance which would be of no effect if adopted. The respondent, however, does not claim it is unconstitutional, but on the other hand stoutly asserts its validity. If the claim of the relators was based upon the theory only that the ordinance is unconstitutional we would have to deny relief for the same reason. But we take the view that the relators, by seeking to have the ordinance submitted to a vote of the people of Kansas City, concede its validity and constitutionality. They will not be heard in asking this court to compel the city to perform a useless thing.

II.   The sole question is whether the ordinance is one which under the charter of the city may be referred. It will be noticed that Sec-

tion 15, Article II, of the Charter of Kansas City sets out the above provisions that an emergency measure may take effect immediately upon its passage, and defines an emergency measure,
**Emergency:** as one passed by an affirmative vote of six members
**Judicial** of the council "for the immediate preservation of the
**Question.** public peace, property, health, safety or morals" in which the emergency is set forth and defined in the preamble thereof, and other measures including *"any ordinance* fixing any tax rate or assessment."

It is conceded that the ordinance, so far as its form is concerned, complies with the requirements of the charter in that respect. It is conceded further that under the rulings of this court an emergency measure is not subject to a referendum vote, and if this is in fact an emergency ordinance within the meaning of Section 15 of Article II of the charter, it is not subject to a referendum vote.

There is considerable discussion regarding the duty of the city clerk when called upon to put into effect the referendum provisions of the charter; whether he may determine for himself if an ordinane, which is sought to be referred, is referable or whether he must take the ordinance as it is presented to him and its character determined by the city council. If that body declares it to be an emergency measure, it is argued, he has no option in the matter but must act upon that conclusion. We have decided in several recent cases that a declaration by a legislative body, that an act or an ordinance which is passed is an emergency measure, cannot make it so, but it is for a court in a judicial proceeding to determine whether the act or ordinance is in fact an emergency measure within the meaning of the Constitution or the fundamental law which authorizes it. [State ex rel. v. Becker, 289 Mo. 660.]

III. We come now to a construction of the clause "any ordinance fixing any tax rate or assessment." The ordinance assessed a tax
**Tax Assessment** of twenty per cent on the retail price of cigarettes
**Ordinance.** in packages. This is an occupation tax. [Viquesney v. Kansas City, 305 Mo. 488; St. Charles ex rel. Palmer v. Schulte, 305 Mo. 124.]

Clause 57, Section I, of the Charter of Kansas City authorizes the city council to license, tax and regulate any and every person, firm, corporation, etc., engaged in the occupation, business, trade, pursuit, calling, profession, etc., dealer or distributor of · goods, wares or merchandise and may in the exercise of those powers classify trades, employments, dealers, etc. The ordinance under consideration was passed under the authority of that general provision.

The relators claim that the ordinance is not one *fixing a tax rate;* that the quoted provision in Section 15 of Article II of the charter, relates to annual tax rates, determined by the council at the time it

makes its appropriations. The section of the charter relating to appropriations and providing for annual tax rates, is quoted as determining the character of an ordinance which comes within the emergency provision of Section 15. It is then argued that the ordinance in question is not an ordinance fixing the rate, but an ordinance *imposing* a tax under the authority of the charter and the Constitution; while rate fixing is a periodical measure entirely different from this imposition of an occupation tax; therefore the ordinance is not an emergency measure and is subject to the referendum.

In this argument the relator overlooked the meaning of the word "assessment," in the quoted phrase. To fix an assessment is to impose a tax. The verb "assess" applies to the duties of an assessor or body authorized to fix tax rates and is different in meaning from the noun "assessment" when applied to a condition like this.

In Corpus Juris this definition and explanation of the term occurs:

"As the word is more commonly employed, an assessment consists of the two processes of listing the persons, property, etc., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them; the designation of the person or things which shall be the subject of taxation and the apportionment of taxation among such persons or things in the ratio prescribed by law; the procedure on the part of the officials by which property is listed, valued, and finally the pro rata declared; not merely the valuation of the property for taxation, but the whole statutory mode of imposing the tax, embracing all the proceedings for raising money by the exercise of the power of taxation from their inception to their conclusion." [5 C. J. 816-817.]

The text then gives a number of definitions of various courts, nearly all of which include the imposition of such a tax as this.

The Supreme Court of Georgia, in Savannah Railway v. Savannah, 112 Ga. 164, l. c. 167, had under consideration an occupation tax and held that the imposition of such a tax was *an assessment* and said, l. c. 167: "If the 'assessment' is not limited to the person, such as a capitation or poll tax, what is there to confine it to any one subject-matter of taxation? It has always been the rule of the Legislature of this State to assess a tax on property, on business, and also a capitation tax; and when taxation is referred to, the power to 'make assessments' includes the power to assess all three, unless there be some other provision to limit it. If it does not extend to the power to levy a tax on business, etc., then it would, in this case, be restricted altogether to property."

In State of Texas v. Farmer, 94 Tex. l. c. 235, the Supreme Court of that state construed the word "assessment" saying: "Under our Constitution and the provisions of our statute, the word embraces more than simply the amount and includes the procedure on the part of

the officials by which the property is listed, valued, and finally the pro rata declared."

In Jackson Lumber Co. v. M'Crimmon, 164 Fed. 759, l. c. 763, the Federal District Court of Florida had under consideration this subject and said: "The word 'assessment,' as used in tax statutes, does not mean merely the valuation of the property for taxation. It includes the whole statutory mode of imposing the tax. It embraces all the proceedings for raising money by the exercise of the power of taxation from the inception to the conclusion of the proceedings."

The Supreme Court of Nebraska, in C. B. & Q. Ry. Co. v. Village of Wilber, 63 Neb. 628, thus defines the word: "As the word is more commonly employed, an assessment consists in the two processes of listing the persons, property, etc., to be taxed, and of estimating the sums which are to be the guide in an apportionment of the tax between them."

Authorities might be quoted indefinitely to the same effect. But we do not have to go to other states for a definition of the term. The statement in the Nebraska case is quoted from Cooley on Taxation, and in State ex rel. Allen v. Kansas City, 116 Mo. l. c. 23, this court quoted, in approval of the same definition from Cooley on Taxation, as follows: "As the word is more commonly employed, an assessment consists in the two processes of *listing* the persons, property, etc., to be taxed, and of *estimating* the sums which are to be the guide to an apportionment of the tax between them." The italics are in the text as quoted. That passage is again quoted by the Kansas City Court of Appeals in the case of Commerce Trust Co. v. Lot Co. and Johnson, 208 Mo. App. l. c. 265.

While we have no right to construe a law by our view of its expediency, we can take that feature into consideration in attempting to ascertain what was in the legislative mind. Kansas City would be in severe financial straits if every occupation tax could be held up by referendum. The framers of the charter could hardly have meant the word "rate" to mean the same thing as "assessment." This ordinance may be a bad measure, but it stands on the same footing as a good one. A reasonable construction is that the framers of the charter meant to have such tax measures subject to the emergency provision. The authorities seem to be practically all one as far as defining the term "assessment" so that it includes the imposition of the tax by the ordinance in question. Therefore the ordinance comes within the exclusion in the charter and is not referable. The alternative writ is therefore quashed. All concur, except *Blair, J.,* not sitting.