STATE OF MISSOURI, EX REL., SHERWOOD SCHMILL, CLYDE BILYEU, LEE SPROWLES, GUY L. PLAYER, AND I. R. BRANSON REALATORS v. HARRY B. CARR, MAYOR AND COMMISSIONER OF DEPARTMENT OF SAFETY AND PUBLIC AFFAIRS, ALBERT AYER, COMMISSIONER OF PUBLIC UTILITIES, W. E. HANDLEY, COMMISSIONER OF HEALTH AND SANITATION, RUEL N. WOMMACK, COMMISSIONER OF REVENUE, AND L. A. WEEKS, COMMISSIONER OF STREETS AND PUBLIC IMPROVEMENTS, AND ALL MEMBERS OF CITY COUNCIL OF THE CITY OF SPRINGFIELD, MISSOURI, RESPONDENTS.—203 S. W. (2d) 670.

Springfield Court of Appeals.   June 11, 1947.

Motion for Rehearing or to Transfer Overruled June 30, 1947.

940

*Farrington & Curtis* and *Jack S. Curtis* for relators.

*Miller & Fairman* for respondents.

942.

BLAIR, J.—The parties in this case will be referred to as relators and as respondents.

Relators filed their petition for *mandamus,* alleging, among other things, that the relators are electors of the City of Springfield, Missouri, and that respondents are the commissioners of said city, and, as such, constitute the council of said City of Springfield, Missouri; that on September 30, 1946, said city council passed Council Bill No. 6872, Ordinance No. 425, with an emergency clause, by the terms of which, a tax of $1.00 per thousand was levied on all cigarettes sold, offered or displayed for sale, within the said city. Said petition further alleged, and it is admitted, that afterwards relators asked by sufficient petitions that said Ordinance No. 425 be repealed or submitted to a referendum vote of the voters of the said city, and that thereafter respondents refused, either to repeal said ordinance or submit it to the voters of said city, claiming that said ordinance went into effect immediately upon passage and approval, under the emergency provision in said ordinance.

In order that said ordinance, which is set out in full by relators and attached to their petition, may be sufficiently understood, it seems best here to set out the parts thereof in controversy, towit:

"AMENDING Council Bill No. 2717, General Ordinance No. 132, passed on January 17, 1940, by adding, after Section 156, fourteen (14) new sections to be known as 156A-1 to 156a-14 inclusive, of Article 2, Chapter 111 of the Revised Ordinances of the City of Springfield, Missouri, 1936, relating to a permit for an occupation license and payment of a registration fee of one ($1.00) dollar, and providing for an occupation tax of one ($1.00) dollar per thousand on all cigarettes sold, offered or displayed for sale within the City of Springfiield, Missouri; licensing and the regulation for retail sale of cigarettes; providing for the method of payment thereof; providing for the means and methods for the administration and enforcement thereof; containing a penalty clause, and providing for an emergency clause, . . ..

". . . There being no ordinance in the City of Springfield, Mis-

souri, licensing and regulating the retail sale of cigarettes and it being necessary in the interest of the public peace, health and safety that this ordinance be passed so that the retail sale of cigarettes be licensed and regulated, an emergency exists within the meaning of the law governing cities of the second class, this ordinance being necessary for the immediate preservation of the public peace, health and safety, this is hereby declared to be an emergency act and it shall be in full force and effect from and after its passage.''

Relators then alleged that said ordinance was not ''necessary for the immediate preservation of the public peace, health and safety, within the meaning of Section 6625, Revised Statutes Missouri, 1939, and that such statement contained in said Ordinance was false and untrue and not made in good faith and was an attempt on the part of the City Council of the City of Springfield, Missouri, to prevent said Ordinance from being referred to the people of the City of Springfield, Missouri, and that the action of the Respondents in refusing to suspend the operation of said ordinance and refer it to the people of the City of Springfield, is arbitrary and unfair; that by the refusal of the Respondents to suspend said Ordinance and to call an election to permit the people of the City of Springfield to vote for acceptance or rejection of said ordinance, the Relators and all other citizens of the City of Springfield, Missouri, have suffered and will suffer irreparable wrong and injury and that the people of the City of Springfield, Missouri, will be denied their right to vote for the approval or rejection of said Ordinance and will be entirely without redress of said wrongs without the interposition and interference of this Court by its writ of *mandamus*.''

Relators prayed this Court to issue its writ of *mandamus* directing and commanding respondents ''to forthwith repeal Council Bill 6872, General Ordinance No. 425 or to suspend operation and enforcement of Council Bill No. 6872, being General Ordinance No. 425 and to call a special election for the purpose of submitting said Ordinance to the people of the City of Springfield for their acceptance or rejection.''

Thereafter we issued our alternative writ of *mandamus*, commanding and enjoining respondents that they repeal said ordinance, or that they call an election for the purpose of submitting said ordinance to the people of the City of Springfield, for their acceptance or rejection, and requiring respondents to appear in this Court and to show cause for their refusal so to do.

Thereafter respondents appeared in this Court and filed their return admitting that, as the Council of said city, and on September 30, 1946, they had passed Council Bill No. 6872, being General Ordinance No. 425, and that the petitions for referendum were sufficient in number and form but insufficient in fact to compel the submission of said ordinance to the people of the City of Springfield, because of the emergency

clause in Section 3 of said ordinance, and set out that respondents, as such City Council, had passed Council Bill No. 6962, Resolution No. 2025, attached to such return.

Respondents further stated in their return that they thought "that the public peace, public health and public safety of the city was also in immediate danger because of the lack of finances to meet the necessary and current payroll expenses in the police department, fire department, street department, health department and utility department, and, that on September 30, 1946, if additional revenue was not anticipated, secured and obtained from some other source other than that already received some of the employees of the police department, fire department, street department, health department and utility department would of necessity, due to the financial straits of said city, be laid off and thus the police protection, fire protection, health and safety of the citizens of said city would be drastically curtailed, and the public peace, public health and public safety of the citizens of said city would be in immediate danger, and Respondents further state that the City Council, under its charter powers, is invested with the right, duty and authority to protect the lives, property and health of its citizens; that the city has a right to exist in the matter of protecting the lives and property of its citizens, and, to this end, fix tax rates and raise revenue. Respondents further state that on September 30, 1946, they had found the necessary operations and maintenance of the general government of said city for 1946, up to that time, had cost the sum of $788,488.19, and said city had only collected in the fiscal year of 1946 revenue in the sum of $544,213.47 for the operation of its general government, which is the department of said city as set out above, and Respondents further state and allege that on said September 30, 1946, the City had borrowed $100,000.00 by selling current expense bonds, and, taking into account a surplus from prior years and transfering funds from the contingency reserve fund, there still remained an estimated deficit of $72,274.72. Respondents further state and allege that when said Ordinance was passed and put into effect on September 30, 1946, they studied, deliberated and found that the public safety of the citizens of Springfield would be destroyed if additional revenue to keep said city going as a policing power for the protection of the lives of its citizens was not forthcoming immediately."

Respondents attached to their return Council Bill No. 6962, Resolution No. 2025, which was marked as Exhibit 7, before the commissioner. To such return, relators filed their reply and answer.

On January 25th, 1947, Honorable W. D. Tatlow, was appointed by this Court as commissioner. Thereafter said commissioner filed his report in this Court. Both relators and respondents have filed their exceptions to such report. After briefs and arguments of attorneys

representing relators and respondents, the case was submitted to this Court and is thus before us.

The main controversy is whether the language used by respondents in Section 3 of Council Bill 6872, General Ordinance No. 425, is such that said ordinance took effect immediately after passage and approval, or whether such ordinance did not go into effect until thirty days thereafter and, if proper objection was made thereto, unless and until approved by the people of Springfield at an election wherein such ordinance was submitted to them.

Article III of Chapter 38, R. S. Mo. 1939, is the charter of cities with the population of Springfield. Section 6625, of said chapter, is as follows:

"No ordinance passed by the city council shall go into effect before the expiration of thirty days from the time of its final passage, except when otherwise required by the general laws of the state, or by the provisions of this article, and except an ordinance for the immediate preservation of the public peace, health or safety, which contains a statement of its urgency and is passed by four-fifths vote of the council; and no grant of any franchise shall be held or construed to be an emergency measure, and all franchises and ordinances granting the same shall be subject to the referendum vote hereinafter provided; and if during said thirty days a petition signed by ten per cent of the vote cast for mayor at the last preceding election protesting against the passage of such ordinance shall be presented to the council, the same shall thereupon be suspended from going into effect, and it shall be the duty of the city council to reconsider such ordinance, and if the same is not entirely repealed the council shall submit the ordinance to a vote of the people, as provided in section 6632, either at the next general election or at a special election to be called for that purpose, and such ordinance shall not then go into effect or become operative unless a majority of the qualified voters as above recited of such city voting on such ordinance shall vote in favor of the same. Said petition shall be in all respects in accordance with the provisions of section 6632, except as to the percentage of signers, and shall be examined and certified by the city clerk as therein provided. If an ordinance is passed by the council within ninety days before a general election, then a petition signed by five per cent or more shall be sufficient to suspend the going into effect of said ordinance, and it shall either be repealed by the council or submitted to the vote of the people at such next general election as hereinbefore provided. (R. S. 1929, Sec. 6501.)"

Relators contend that, as proper petitions were filed by them, said ordinances did not go into effect unless and until it was approved by the people of Springfield at an election held for that purpose. While it is the contention of respondents that, even though petitions sufficient in form and number were presented to the City Council, the

emergency clause in said ordinance was sufficient to require said ordinance to go into effect immediately and that the petition of the voters did not prevent said ordinance from going into effect at once, in view of the emergency clause in said ordinance.

Relators contend that the financial difficulties of said city, as stated in their return by respondents and as described in Council Bill No. 6962, Resolution No. 2025, passed and approved on October 31, 1946, (long after Ordinance No. 425 was passed) as set out in respondents' return, cannot be taken into consideration in determing whether or not an emergency existed on September 30, 1946, when Ordinance No. 425 was passed and approved, and that the emergency, if any, must be wholly stated in said Ordinance No. 425.

No statement of such urgency, other than the statement that "an emergency exists within the meaning of the law governing cities of the second class, this ordinance being necessary for the immediate preservation of the public peace, health and safety, this is hereby declared to be an emergency act and it shall be in full force and effect from and after its passage," is stated in Ordinance No. 425. Is such statement of emergency sufficient?

Relators contend that such statement of emergency or urgency is not sufficient and that the financial condition of said city, not stated in said ordinance, as such emergency or urgency, cannot be considered. While, on the other hand, respondents contend that such statement is sufficient in itself and that we should also consider, as part of such emergency or urgency, the then financial condition of said city as set out in Council Bill No. 6962, Resolution No. 2025, and .in respondent's return, in determining the existence of such emergency or urgency. Such, in a nut shell, are the contentions of the parties.

Under Section 6625, Revised Statutes Missouri 1939, among other things, no ordinance of cities of the second class can go into effect until thirty days after passage, unless such ordinance not only states that such ordinace is for the immediate preservation of the public peace, etc., but also that such ordinance should contain a statement of the emergency or urgency.

It will be noted that said Section 6625, provides not only that the ordinance must be one "for the immediate preservation of the public peace, health and safety," but such ordinance must contain "a statement of the urgency." It would seem that more is required by said section of the statute than a mere statement that the passage of the ordinance is necessary for the immediate preservation of the public peace, etc. That section also requires a statement of the emergency or urgncy. If an ordinance for the immediate preservation of the public peace, etc., went into effect immediately, there would be no necessity for a further requirement in said Section 6625, that. such ordinance should contain "a statement of the urgency."

948

Passing, for the moment, the contention of respondents that the financial condition of said city, as shown by Council Bill No. 6962, Resolution No. 2025, and as made in respondent's return, does the ordinance itself, as passed by respondents, contain a sufficient statement of such emergency or urgency, as to place said ordinance in immediate effect?

The statement of emergency in the ordinance itself, is that there was then "no ordinance in the City of Springfield, Missouri, licensing and regulating the retail sale of cigarettes." The preamble provision of Council Bill No. 6872, Ordinance No. 425, shows that there previously had been in effect Council Bill No. 2717, General Ordinance No. 132, which was amended on the very day, and just before Ordinance No. 425 was passed. General Ordinance No. 132 did not expressly mention cigarettes and cigarettes were previously sold under Ordinance No. 132 as merchandise. Ordinance No. 132, in force in 1936, is fully set out in relators' Exhibit A, introduced before the commissioner, and now in the files here.

Respondents contend that the retail sale of cigarettes under Ordinance No. 132, was not sufficiently safeguarded, and that said Ordinance No. 132 did not then sufficiently license and regulate the retail sale of cigarettes.

Assuming that provision for the licensing and regulation of the retail sale of cigarettes was not expressly taken care of in said Ordinance No. 132, it was argued by relators that such licensing and regulation of the retail sale of cigarettes did not constitute sufficient emergency for the enactment of an ordinance, which could not possibly go into effect, under previous contracts, before the thirty days provided for all ordinance by Section 6625, Revised Statutes Missouri 1939. In other words, if such licensing and regulation of the retail sale of cigarettes was the purpose of Ordinance No. 425, there was no need whatever, under the existing circumstances, for an emergency clause, and such emergency clause was for the sole purpose of preventing those opposed to such ordinance from having it referred to the people, and such failure of Ordinance No. 132 to license and regulate the retail sale of cigarettes was not a real emergency or urgency within the meaning of Section 6625, Revised Statutes Missouri 1939.

We are impressed with the soundness of this argument and feel that if Ordinance No. 425 could not possibly become effective for more than the thirty days required by Section 6625, Revised Statutes Missouri 1939, the insertion of such emergency clause, conceding that such statement was a statement of emergency or urgency, such statement of emeregncy could only have been made for one purpose, and that purpose was to prevent the referendum election upon such ordinance. We feel that, even though the licensing and regulation of the retail sale of cigarettes was not sfficiently provided for under

General Ordinance No. 132, there was no emergency or urgency on September 30, 1946, under the circumstances then existing, for such ordinance going into effect immediately, without waiting for the thirty days provided by said Section 6625, Revised Statutes Missouri 1939.

Does the mere fact that the Council of the City of Springfield stated that an emergency existed, settle the question of such emergency and bind the Court?

The commissioner has recommended to this Court that the use of the word "emergency" in an ordinance does not bind the courts, and the courts must determine for themselves whether of not such emergency actually existed at the time. Naturally relators take the same position in brief and argument.

The commissioner his cited the following cases on this proposition, towit: [State ex rel. Asotsky v. Regan, 317 Mo. 1216, 298 S. W. 747, 1. c. 748; Edmonds, et al. v. City of St. Louis, 348 Mo. 1063, 156 S. W. (2d) 619; State ex rel. Pollock v. Becker, 289 Mo. 660, 233 S. W. 641; State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S. W. 327; Ex Parte Hoffman (Calif) 99 Pac. 1. c. 517.]

The citation to 298 S. W. 747, has been carefully examined and, in passing on that case Judge WHITE, at page 748, said:

"We have decided in several recent cases that a declaration, by a legislative body, that an act or an ordinance which is passed is an emergency measure, cannot make it so, but it is for a court in a judicial proceeding to determine whether the act or ordinance is in fact an emergency within the meaning of the Constitution of the fundamental law which authorizes it. [State ex rel. v. Becker, 289 Mo. 660, 233 S. W. 641."]

In the case of State ex rel. v. Becker, 289 Mo. 660, 233 S. W. 641, referred to by Judge WHITE, and cited by our commissioner, the opinion of WOODSON, J., merely set out the pleadings and decided the case on the strength of State ex rel. Sullivan, 224 S. W. 327. In the Becker case, GRAVES, J., wrote a separate opinion, and reiterated what he had previously said in the Sullivan case.

We have examined the Becker case carefully, and must say that we find it of little value in the case before us. There were so many concurrences in the result that it is quite difficult to ascertain just what was really decided by the Court. In paragraph IV of the Becker case, Judge GRAVES referred to and disagreed with a previous holding that the Courts of Missouri were bound by the decisions of the Oregon State Supreme Court, to the effect that the Legislature and not the Courts must decide when an emergency existed.

But Chief Justice WALKER, with whose separate opinion Judges WILLIAMS, GOOD and WILLIAMSON concurred, expressly disagreed with what Judge WOODSON had said. Such separate opinion of Chief Justice WALKER is, therefore, the real opinion in the Becker case.

But what Judge GRAVES said in the Sullivan case was apparently made the law of this State in the Becker case, from which we quote as follows:

"We further said that this court could examine the face of the legislatives act, and if in fact it was not for 'the immediate preservation of the public peace, health or safety' of the state, we could and would declare the legislative declaration to the effect that it was 'necessary for the immediate preservation of the public peace, health or safety' of the state void, and of no effect, as being in conflict with said constitutional provision, and the spirit thereof."

It seems that the main reliance of the commissioner and of relators, is the case of Edmonds, et al. v. City of St. Louis, 348 Mo. 1063, 156 S. W. (2d) 619, from which we quote as follows:

"The fact that it (the ordinance) had an emergency clause did not make it an emergent police measure." (Words in parenthesis ours.)

That seems to be the latest expression of the Missouri Supreme Court *in banc.* Such declaration, made September 5, 1941, is binding on this Court.

Our commissioner also quoted from Ex Parte Hoffman (Calif.), 99 Pac. l. c. 517. He quoted the Supreme Court of California as saying that,

" ' . . . . . the mere declaration of the council in such a case that the ordinance is passed for the immediate preservation of the public health is neither conclusive nor yet sufficient. The nature of the ordinance itself will, in most instances, be determinative, and where a sudden emergency has arisen, a statement of the nature of the emergency finds proper place to support the declaration. . . . . . ' "

Respondents have cited a number of cases to the effect that the burden of proof is on relators. We fully agree that the burden of proof is on relators, so far as they are entitled to relief of this Court, and think they have sustained such burden.

We also agree that relators must show themselves clearly entitled to the relief they are asking and that this Court should not issue its writ of *mandamus* in any case where such relief does not clearly appear to be essential.

Respondents cite the case of Ploch v. St. Louis, 345 Mo. 1069, 138 S. W. (2d) 1020. The attack made in that case was on the ordinance of St. Louis, which was said to be quite similar to Ordinance No. 425, in this case. It was not that the emergency clause caused the ordinance to be attacked, but that said ordinance was said to be violative of certain provisions of the State Constitution and certain statutes of the State.

It is true that Judge GANTT said in his opinion affirming the judgment of the circuit court, that,

"The ordinance is not a purely revenue measure, for the tax levied is such that it tends to diminish the use of the article. An occupation tax may be both a police regulation and a revenue measure."

But ELLISON, J., wrote a separate dissenting opinion, in which LEEDY, Chief Justice, concurred. The record shrows that HAYS, CLARK, TIPTON and DOUGLAS, JJ., concurred in the opinion as modified, and the modified opinion was the opinion of the Court. Presumably, the opinion of GANTT, J., affirming the judgment of the circuit court, as modified, received the concurrence of the majority of the Court. The case is certainly no authority against the contention of relators that the ordinance itself must contain a statement of the emergency, which required it to go into effect immediately.

Respondents also cite Asotsky v. Regan, 317 No. 1216, 298 S. W. 747; Ex Parte Asotsky, 319 Mo. 810, 5 S. W. (2d) 22, and Viquesney v. Kansas City, 305 Mo. 488, 266 S. W. 700, 1. c. 702.

We have already quoted from Asotsky v. Regan, 317 Mo. 1216, 298 S. W. 747. That case plainly recognizes the rule that courts are not bound by the declaration of the legislative body that an emergency exists, even if it did hold a measure might be both a police reglation and a revenue measure at the same time.

The ordinance in the case at bar seems to be samewhat similar to the ordinance of the City of Kansas City attacked in the case of Ex Parte Asotsky, *supra.* While JAMES T. BLAIR, J., sustained the Kansas City Ordinance, he did so against the attack that such ordinance violated certain constitutional and legislative provisions, and not on the ground that the Council of the City of Kansas City could put the ordinance into immediate effect by a declaration of emergency. It is true that Judge BLAIR cited the case just hereinafter noticed, and quoted from it as follows:

"An occupation tax may at the same time be both a police regulation and a revenue measure."

But that ordinance was not attacked from the angle that this one is attacked, and we do not regard that case as any authority on the question here involved.

We are unable to see how Viquesney v. Kansas City, 305 Mo. 488, 266 S. W. 700, helps respondents in the least. While Judge WHITE did not say that "an occupation tax may at the same time be both a police regulation and a revenue measure," Ordinance No. 425 was not attacked from that angle, and the Viquesney case is of no value in this case.

Judge TATLOW, our commissioner, said:

"When you look at the body of the ordinance for the provisions regulating the retail sale of cigarettes, you find no such provision as prohibiting the sale of cigarettes to minors, or the hours between which they may be sold, or the places at which they may be sold, or any other similar provision, or any provision for inspection. The sole

regulatory provision is the one dollar which the ordinance requires to be paid as a registration fee or license for the right to purchase stamps in order to pay the taxes, which the ordinance assesses and levies for the privileges of selling cigarettes at retail. The one dollar registration fee certainly is not calculated to lessen or limit, either the retail sale of cigarettes of their use, in the city of Springfield. To my mind at least, it is perfectly plain that the ordinance cannot be sustained as an emergency measure based solely on the police power, to either regulate or limit the retail sale or use of cigarettes in the City of Springfield, Missouri. It is useless to further labor this question. An emergency based solely on the regulation of the retail sale of cigarettes did not justify the city council in refusing to either repeal or submit the ordinance to the voters of the city for approval or rejection.''

It is our conclusion, from a careful consideration of all of these cases, that this Court is not bound by the declaration of respondents that an emergency existed, and we do not think that such an emergency or urgency was created by the declaration in said Ordinance No. 425, that it was necessary ''in the interets of public peace  . . . . that this ordinance be passed so that the retail sale of cigarettes may be licensed and regulated.'' It is clear to us that no emergency or urgency existed under the declarations of the ordinance itself, which would enable said ordinance to go into effect at once and preclude referendum of said ordinance to the people.

We think Section 6625 is mandatory and not merely declaratory and advisory. Judge TATLOW has stated in his report as follows:

''. . . . . the charter makes three provisions: (a) The emergency must be for the immediate preservation of the public peace, health or safety. (b) It must contain a statement of its urgency. (c) It must be passed by a four-fifths vote of the city council. These provisions are mandatory in form. They are each of the essence of the enactment. If either are mandatory, and not merely directory, then it would seem that they all are.''

Commissioner TATLOW also said:

''. . . . . If the council is bound by the statement that the emergency for the ordinance is that the retail sale of cigarettes be licenses (d) and regulated, then it is perfectly apparent for the reasons set forth in Paragraph IV, *supra,* that there was no emergency and that the council had ample time in which to submit the ordinance to the voters. There certainly was no immediate necessity for the regulation of the sale of cigarettes in the city, so that the regulation thereof could not be delayed for thirty or sixty days, in which time the ordinance could have been submitted to the voters.''

We fully agree with the conclusion of Judge TATLOW, our commissioner, that ''the record will bear no other construction than the emergency, if any, is based on the necessity for additional revenue, and

not the desire of the city council to limit and control the use of cigarettes in the city."

We not only agree with Judge TATLOW, but we think that respondents' exceptions to his report to this Court should be and they are hereby overruled.

As we have previously held that the provision in Section 6625, Revised Statutes Missouri 1939, for a statement of the urgency is mandatory and not directory or advisory merely, it seems unnecessary for us here to consider any alleged bad financial condition of the .City of Springfield.

What Judge TATLOW, our commissioner, said in paragraph VII of his report, was based solely upon the possibility that this Court might not agree with him in what he said as to the requirement, in Section 6625, Revised Statutes Missouri 1939, of a statement of urgency and that such statement was mandatory and not merely directory or advisory. Since we agree with him that such provision is mandatory and not merely directory or advisory, there is no need in this case and at this time for us to consider further the financial condition of the City of Springfield, not stated as such emergency or urgency in Ordinance No. 425.

The alternative writ of *mandamus* is made preemptory and permanent, and respondents are required at once, either to repeal said Ordinance No. 425, or to submit it to the voters of Springfield, under the referendum provisions of Section 6625, Revised Statutes Missouri 1939, *et seq. Fulbright, P. J.,* and *Vandeventer, J.,* concur.