Carol WINTEROWD, et al., Appellants,

v.

E. Richard BRENNEMAN, City Clerk, City of Kansas City, Missouri, Respondent,

and

Kroh Brothers Development Company and Adele Korth, Intervenors.

No. WD 33080.

Missouri Court of Appeals, Western District.

June 29, 1982.

Michael J. Maloney, Popham, Conway, Sweeny, Fremont & Bundschu, Kansas City, for appellants.

Aaron A. Wilson, City Atty., Gage & Tucker, John H. Kreamer, Terry J. Brady, Myron S. Silverman, Kansas City, for respondent and intervenors.

Before NUGENT, P. J., and TURNAGE and LOWENSTEIN, JJ.

TURNAGE, Judge.

Carol Winterowd and others formed a committee of petitioners pursuant to Article 17, Section 443 of the City Charter of Kansas City, to circulate petitions calling for a referendum on two ordinances rezoning land near 93rd and Ward Parkway. After filing petitions calling for a referendum on such ordinances, the Committee sought a writ of mandamus against the City Clerk to compel him to perform his duties under the referendum provisions of the Charter. After allowing Kroh Brothers and Adele Korth to intervene as defendants in addition to the City Clerk, the trial court sustained a motion to dismiss because it believed the acts of the Clerk involved in this case were quasi judicial and not subject to mandamus.

On this appeal Winterowd contends only ministerial acts of the Clerk are involved and mandamus is a proper remedy. Reversed and remanded.

The petition alleged that the City Council of Kansas City had passed two ordinances rezoning the land in question. The first ordinance rezoned the land from one family dwellings to high apartments, and the second rezoned the same land from high apartments to high apartments-administrative office buildings-limited district. Apparently it was necessary to pass two ordinances because under the zoning ordinances land could not be rezoned from one family dwellings to the district allowing administrative office buildings without going through the apartment district.

The petition alleged that Winterowd and her committee had circulated referendum petitions pursuant to Article 17, Section 430 of the Charter, and on March 4, 1981, had delivered such petitions to the City Clerk. On March 12, 1981, counsel for the Winterowd committee advised the Clerk that the certificate required to be attached to the petitions by the Charter had not been attached, and asked to be advised as soon as the certificate was available. The petition further alleged that on March 13, 1981, the Clerk advised counsel that he had no duty to attach a certificate. On that same day counsel demanded that the certificate be attached.

It was further alleged that on March 16, 1981, the Clerk attached a certificate to the petitions which stated that the papers delivered to his office on March 4, 1981, did not meet the requirements of Section 430 of the Charter for a referendum petition because the total number of signatures submitted was not equal in number to at least ten percent of the total vote cast for candidates for mayor in the last regular election. On March 26, 1981, the Winterowd committee delivered additional signatues to the Clerk. Along with the submission of the additional signatures, counsel for the City advised the Clerk that he was placed on formal notice that his certificate of March 16 was not in accord with the requirements of Section 443 of the Charter, which requires that he "set forth in the certificate the particulars in which [the petition] is insufficient." Counsel in that letter took the position that the Clerk was required to advise the Committee the number of valid signatures their petitions lacked in order to be sufficient.

Counsel further advised that they were not waiving the claim that the ten-day period in which they had to supplement their original petitions had not begun to run because the Clerk had failed to inform them as to the number of signatures their petition fell short.

The petition continued that on March 31, the Clerk prepared a certificate stating that the petitions on both ordinances were insufficient for the following reasons: (1) The initial petitions filed on March 4, 1981, did not contain 12,628 signatures, and consequently supplemental petitions are not permitted. (2) The initial petitions did not contain the required number of signatures and supplemental petitions were not filed by March 16, which was ten days after the Clerk had notified the Committee that the initial petitions were insufficient. (3) Furthermore, in any event, the combined total of valid registered voters signing the petitions filed on March 4 and 26 may not contain 12,628 signatures as required for referendum. The Clerk stated it was impossible to verify this until the election authorities concluded their validation procedure. The Clerk concluded that for these reasons no further action would be taken on the papers.

The petition continued that on April 1, 1981, counsel for the Committee requested the Clerk to prepare an addendum to his certificate to state the number of valid registered voters which had signed the petitions filed on March 4 and 26 as soon as the information was available. The petition further alleged that the Charter requires the Clerk to examine the petitions, determine their sufficiency and attach a certificate to each petition showing the result of his examination, and, if he certifies a petition as insufficient, he must set forth the particulars in which the petition is insufficient. The petition further alleged that the Clerk had refused to certify the number of valid registered voters who had signed the petitions and until he certified that number, the Committee would have no knowledge of the additional number of signatures which must be obtained in the ten-day additional period given by the Charter.

The prayer of the petition was for an order in mandamus to require the Clerk to determine the number of valid registered voters who signed the petitions, and if it is found that a sufficient number have signed, to then certify the sufficiency of the petitions to the Council.

It should first be noted that in ruling on a motion to dismiss, both the trial court and this court are required to accept as true all well pleaded facts and the reasonable inferences favorable to the pleader to be drawn therefrom. If those facts and inferences reveal the existence of any cause of action, the petition should not be dismissed. *Allied Disposal v. Bob's Home Service*, 595 S.W.2d 417, 419[1] (Mo.App.1980).

Article 17 of the Charter provides for referendum elections. Section 430 thereof provides that any ordinance passed by the Council, except emergency measures, shall be subject to referendum of the electors. If, within 40 days after the passage of any such ordinance, and, subject to notice provisions, a petition signed by electors, equal in number to at least ten percent of the total vote cast for candidates for the office of mayor at the last preceding regular election, be filed with the City Clerk requesting that the ordinance or any part thereof be repealed or submitted to a vote of the electors, it shall not take effect until the steps provided in the Charter have been taken.

Section 431 provides that the petition and any supplementary petition shall be examined by the City Clerk, and if found sufficient by him, he shall certify that fact to the Council and the ordinance shall not go into effect unless approved by the electors. That section gives the Council the option to repeal the ordinance in which event, of course, there would be no need for the referendum.

Section 443 provides that all petition papers shall be filed with the City Clerk and shall contain the names and addresses of five electors of the City who compose a committee of petitioners. Within ten days after a petition shall have been filed, the

Clerk shall determine its sufficiency and shall attach thereto a certificate showing the result of his examination. If he shall certify that the petition is insufficient, he shall set forth in the certificate the particulars in which it is insufficient and shall notify at once the committee of his findings.

Section 444 provides that if the City Clerk shall find a petition to be insufficient, the committee may, at any time within ten days after the making of a certificate of insufficiency, file a supplementary petition upon additional papers as provided in the case of the original petition. The Clerk shall, within five days after the supplementary petition is filed, make examination of the supplementary petition, and, if his certificate shall show the petition as supplemented still to be insufficient, he shall notify the committee of his findings and no further action shall be had on such insufficient petition.

■ The first issue joined on this appeal is whether or not the petition for mandamus calls for the court to order the Clerk to perform a ministerial duty or whether it requests the court to order the Clerk to perform the quasi judicial act of certifying to the Council that the petition, as supplemented in this case, was sufficient. The Winterowd committee contends, of course, that the petition does not request the court to order the Clerk to perform anything other than ministerial duties. In *State ex rel. Johnson v. Regan*, 229 Mo.App. 237, 76 S.W.2d 736, 738[1] (1934), this court held that the City Clerk of Kansas City could be compelled by mandamus to perform any purely ministerial duty. This court, in that case, held that the function of the Clerk in passing on the sufficiency of a petition calling for a referendum required the Clerk to act in a quasi judicial capacity. In *Regan* the court held the clerk could not be ordered to certify petitions as sufficient because in making the determination of whether the petitions contained the required number of valid signatures of electors the clerk performed a quasi judicial act and would not be subject to mandamus.

The City in this case contends the petition for mandamus did not state a cause of action because it sought to compel the Clerk to perform the quasi judicial task of certifying the petitions for referendum as sufficient.

In this argument the City misconceives the petition for mandamus. At no point did the petition seek to compel the Clerk to certify to the Council that the petitions contained the required number of valid elector signatures. The thrust of the petition is that the Clerk is required by the Charter to inform the Committee, after the initial petition is filed, as to how many signatures the petition falls short if the Clerk deems the petition insufficient. Here, the Clerk informed the Committee that the initial petition did not contain the required number of signatures. The Committee contends the Clerk was required by the Charter to inform them as to either how many valid elector signatures were found, or the number of signatures the petition lacked, in order to be found sufficient. Section 443 requires the Clerk, if he finds the petition insufficient, to set forth in his certificate the *particulars* in which it is insufficient. In Webster's Third New International Dictionary (1971) "particular" is defined as "an individual fact, point, circumstance or detail: a specific item of information; a factual detail: a statement setting forth the details of a matter." Section 430 requires the petition to be signed by electors equal to ten percent of the total vote cast for all candidates for mayor at the last regular election. This requirement means that the signatures on the petition must be of registered voters of the City of Kansas City and in this case the number required was 12,628.

The duty of determining whether or not the signatures on the petition belonged to a registered voter falls to the Clerk. The committee circulating petitions can obviously count the number of signatures which are contained on the petitions, but until the Clerk makes the determination of how many of those signatures belong to electors or registered voters of the City of Kansas

City, the sufficiency of the petitions cannot be ascertained. The sufficiency of petitions depends entirely on the certificate of the Clerk as to how many electors have signed. For the Clerk to simply state that the petitions do not contain the required number of signatures does not comply with the requirement that he inform the committee the particulars in which the petition is insufficient. The only specific item of information, or factual detail, or individual fact, point or circumstance which is embraced within the meaning of the word "particular" which would have any meaning to the committee of petitioners would be the information as to how many signatures the petitions lacked which caused them to be insufficient. If the Clerk found any of the signatures on the initial petition not to belong to electors, the committee would have no idea as to how many signatures it was required to obtain on the supplemental petition in order for the petitions to be found to be sufficient.

The ultimate decision as to how many electors have signed the petitions is vested in the Clerk. The committee may feel in good faith that it has a sufficient number of signatures, but until the Clerk makes his decision, no one knows how many valid signatures the petitions actually contain. There would be no reason to provide for supplemental petitions if the committee is in the dark as to the number of additional signatures it will have to obtain. The only particular which would aid in the process is the Clerk's count of the number of valid signatures contained on the petition.

It is clear that for the Clerk to inform the committee of the particulars in which the petition is insufficient, it is essential that the Clerk inform the committee as to how many signatures are lacking. The bare conclusion that the petitions do not contain a sufficient number of signatures does not inform the committee of the particulars of the insufficiency which the Charter requires to be given to them.

The Winterowd committee did not request the court to order the Clerk to certify that the petitions were sufficient, but requested the court to order the Clerk to perform his duty to notify them of the particulars in which their petitions were found to be insufficient. This does not involve the court ordering the Clerk to perform a quasi judicial function, but only calls for the court to order the Clerk to perform the ministerial duty imposed upon him by Charter to inform the Committee of the number of signatures the petition lacked to cause it to be insufficient.

■ The City further contends that the Committee was not entitled to relief because the initial petition filed on March 4 did not contain the required number of signatures and until the Clerk was presented with an initial petition containing the required number of elector signatures he was not required to perform any duty. The City contends in its brief that the Charter imposes a two-step requirement on petitions calling for a referendum of both quantity and quality. The City contends that if the initial petition does not contain the required gross [1] number of signatures, the City Clerk is not required to take any action concerning that petition. If the first petition contains a sufficient gross number of signatures, the argument goes, then the Clerk must comply with Section 443 and determine whether or not the signatures are those of electors. The City contends that by allowing initial petitions to be filed with less than the required gross number of signatures, the City would be put to unnecessary time, effort and expense in certifying that such petitions were not sufficient. The City relies on *Dixon v. Hall*, 210 Ark. 891, 198 S.W.2d 1002 (1946) for this proposition.

It should first be noted that the City in its argument entirely rewrites the Charter provisions. There is nothing in Section 443, or any other Charter provision, which requires the initial petition to contain a gross number of signatures equal to the required number. Section 443 requires the Clerk,

1. By *gross signatures* the City means the initial petition is required to contain, in this case, at least 12,628 signatures without regard to whether or not they are registered voters.

within ten days after a petition shall have been filed, to determine its sufficiency and make his certificate setting forth the particulars in which it is insufficient, if it is found to be insufficient. This section does not make any requirement as to the number of signatures which the initial petition must contain. The only requirement is that for petitions to be deemed sufficient they must contain a total of ten percent of the number of votes cast for mayor. Further Section 444 makes it abundantly clear that the initial petition is not required to be sufficient when it provides for the filing of supplemental petitions. Thus, the Charter clearly contemplates that the initial petition is to be checked to determine its sufficiency, and, as already pointed out, the Clerk is required to notify the Committee of the number of signatures which it lacks if it is found to be insufficient and the Committee is then allowed ten days to present supplemental petitions.

In contrast to the provisions of the Charter which allows a supplemental petition to be filed if the initial petition is found to be insufficient, the Supreme Court of Arkansas in *Dixon* was dealing with a constitutional provision which provided for correction or amendment if the petition was found to be insufficient. The court held that correction and amendment go to form and error rather than to complete failure to obtain the necessary number of signatures. Section 444 provides for supplemental petitions. *Supplement* is defined in Webster's Third New International Dictionary (1971) to "fill up or supply by additions: add something to: fill the deficiencies of." *Dixon* is clearly distinguishable. The Charter plainly provides that the Committee shall have ten days after the initial petition is held to be insufficient in which to obtain the necessary number of signatures to make the petition sufficient.

■ The City next contends that even if the Clerk is required to issue a certificate on the initial petition although it does not contain the gross number of required signatures, the Committee is not entitled to relief in this case because it did not file supplemental petitions within ten days after it was notified of the insufficiency of the initial petition. As already held, the Clerk has yet to comply with the Charter by issuing a certificate telling the Committee the particulars in which the initial petition was insufficient because the Clerk has yet to notify the Committee as to the number of signature they lacked on their first petition. Until the Clerk performs that duty the time in which the petitioners have to file supplemental petitions has not begun to run. The time periods contained in the Charter in which the various acts are to be performed are mandatory because the ordinance is suspended only during the times allowed for the various steps of the referendum process. *Hawkins v. City of St. Joseph*, 281 S.W. 420, 422[7] (Mo. banc 1926). However, the petitioners cannot be penalized for something beyond their control. Here, the Clerk refused to perform his duty by notifying them of the number of signatures they lacked, and, indeed the petitioners have done all they can do to compel the Clerk to perform his duty by filing a suit on his failure to do so.

■ The City finally contends that the issues in this case are moot because the Clerk has, in fact, notified the petitioners as to the number of signatures contained on both the initial and supplementary petition. The facts on which the City relies are not contained in the record of this appeal and thus may not be considered by this court. However, even assuming the Clerk has now informed the Committee of the number of signatures contained on the initial and supplemental petitions, this suit would not be moot. This for the reason that the Clerk did not inform the Committee of the number of signatures the initial petition contained prior to the supplemental petition being filed. The Committee stated it was not waiving the failure of performance by the Clerk when it filed the supplemental petition. The Committee may not be penalized by the Clerk's failure to perform. To hold as the City contends would allow the City to avoid any referendum by the Clerk simply failing to perform his duty. The

petitioners are entitled to have the Clerk perform his duty concerning the initial petition and are entitled under the provisions of Section 444 to have ten days after being notified of the particulars of the insufficiency within which to file supplemental petitions.

This court holds that the petition stated a cause of action because it seeks to compel the Clerk to perform his ministerial duty to certify the initial petition as required by Charter to inform the Committee of the number of signatures required to make the petition sufficient. In *State ex rel. Whittington v. Strahm*, 374 S.W.2d 127 (Mo. banc 1963) the court held the City Clerk of Kansas City could be compelled by mandamus to perform the ministerial duty to certify as to the sufficiency of referendum petitions. That is all the petition here seeks. This opinion does not attempt to dictate to the trial court as to what finding it should make as to the facts, because this court has been required to accept the facts pleaded in the petition as true. However, if the trial court should find petitioners are entitled to relief under the facts as found by it, and under the law as expressed in this opinion, then the petitioners would be entitled to a certificate informing them of the particulars of the insufficiency of their initial petition, if found to be insufficient, and would have ten days thereafter in which to file supplemental petitions. The Clerk would have five days after the filing of the supplemental petitions to make a certificate as to the sufficiency of the petitions.

The judgment is reversed and this cause is remanded for further proceedings.

All concur.