**STATE of Missouri ex rel. William H. WHITTINGTON, Gale E. Lord, William Paul Hunter, D. C., and Jean McCone, (Plaintiffs) Appellants,**

v.

**Margaret STRAHM, (Defendant) Respondent.**

No. 50140.

Supreme Court of Missouri,

En Banc.

Dec. 9, 1963.

Rehearing Denied Jan. 13, 1964.

John H. Foard, Kansas City, for appellants.

Keith Wilson, Jr., City Counselor, for respondent.

Edgar M. Eagan, Jefferson City, for Missouri Dental Assn., amicus curiae.

HOLMAN, Judge.

Plaintiffs, as citizens, taxpayers, and electors of Kansas City, Missouri, filed this suit in an effort to obtain a writ of mandamus commanding defendant, City Clerk of Kansas City, to take certain action in regard to a referendum petition which had theretofore been filed with her. The trial court denied the relief sought. Upon appeal to the Kansas City Court of Appeals the judgment was reversed and cause remanded with directions to the trial court to issue its writ of mandamus as prayed. However, one of the judges dissented because he thought the opinion was in conflict with the decision of the St. Louis Court of Appeals in the case of Carson v. Oxenhandler, 334 S.W.2d 394, and upon his request, the cause was transferred to this court. State ex rel. Whittington v. Strahm, Mo.App., 366 S.W.2d 495. We will accordingly determine the case "the same as on original appeal." Article V, Section 10, Constitution of Missouri 1945, V.A.M.S.

The facts were stipulated and hence are not in dispute. On June 2, 1961, an ordinance was introduced into the City Council of Kansas City which, omitting formal parts, reads as follows:

"Whereas, the medical profession has determined that fluoridation of public water supplies is an effective and salutary aid in the care of teeth and prevention of decay and diseases thereof, and

"Whereas, the Council of Kansas City deems it in the interest of the health and welfare of the citizens of Kansas City that they be provided with fluoridation of the city's water supply,

"Now, Therefore, be it ordained by the Council of Kansas City:

"Section 1. That the Director of the Water Department be and he is hereby authorized to make the necessary plans and preparations for the fluoridation of Kansas City's public water supply. Such plans and preparations shall include proper and rigid control of the amount of fluorine to be used and take into consideration the natural concentration of fluorine of the Missouri River water in Kansas City. The plans and preparations shall be in accordance with approved standards used in other major metropolitan areas.

"Section 2. The Director of the Water Department is authorized to negotiate a contract for a total sum of not more than $65,000 for the initial installation and equipment charge necessary for the fluoridation of said water supply, said contract to be submitted to this Council for approval.

"Section 3. The Director of the Water Department is directed to include in the future budgets the sum of $50,000 per year to cover the cost of fluoridation of the water supply."

That ordinance was assigned to a committee of the council and the committee held three different hearings thereon in July 1961, at each of which a large number of persons appeared, some of whom favored the ordinance and others opposed it. That ordinance was never reported out of the committee and remained pending until January 12, 1962, when it was "lost on a semiannual docket clearance."

On September 22, 1961, a resolution was introduced into, and on the same date passed, by the city council, which contained the identical provisions as those in the ordinance heretofore set out. On March 9, 1962, the city council passed Ordinance No. 27271 which approved a contract dated March 5, 1962, between Kansas City and S. R. Brunn Construction Company for the

purchase of fluoridation facilities by the Director of the Water Department at a cost of $46,510, which ordinance was the first ordinance passed by the city council which made possible the addition of fluorides to the municipal water supply of said city.

Section 430 of the Kansas City Charter provides: "Any ordinance passed by the council, except emergency measures, shall be subject to referendum of the electors." The section further set out the procedure for seeking a referendum. Section 15 of the charter defines emergency measures as follows: "An emergency measure is any ordinance passed by the affirmative vote of six members of the council for the immediate preservation of the public peace, property, health, safety or morals, in which the emergency is set for [forth] and defined in a preamble thereto; any ordinance calling any election, or providing for the submission of any proposal to the people; any ordinance making an appropriation for the payment of principal or interest of the public debt, or for current expenses of the city government; any general appropriation ordinance; any ordinance relating to any public improvement to be paid for by special assessment."

In compliance with the procedure specified in the charter there was filed with defendant, within the time provided, a referendum petition containing more than 18,000 names and addresses. Section 430 requires referendum petitions to contain signatures equal to 10% of the total vote cast for mayor at the preceding regular municipal election and it was stipulated that at the last election, which occurred in 1959, said total vote was 94,305; it was also stipulated that, upon the filing of said referendum petition, defendant refused to examine same and to certify as to its sufficiency and that she was instructed by the city council, by resolution, to take no further action on said referendum petition.

The agreed statement also specified that at the time in question Kansas City was adding eight different compounds to its water supply, all of which were for the purpose of purifying, softening, improving the taste of, and regulating the acid-alkaline balance of the water; that the purpose of purchasing the equipment, as provided in the ordinance under consideration, is to add fluorides to the water supply for the medicinal purposes of hardening the teeth and preventing dental caries; that Missouri River water, from which all water for the system is taken, contains a quantity of natural fluorides, but additional fluorides have never before been added by Kansas City to its municipal water supply; that the fluoridation facilities to be acquired are permanent facilities and the fluoridation provided for under the foregoing ordinance will affect the water supplied to all persons who subscribe for water from the Kansas City municipal water system.

It is the primary contention of plaintiffs, as disclosed by their pleadings and briefs, that the ordinance in question, not being an emergency measure, is referable under the charter provision. It is the position of defendant that under the provisions of the charter, only legislative ordinances are referable, and that Ordinance No. 27271 was an administrative and not a legislative ordinance and hence was not the proper subject of a referendum petition.

The opinion of the Kansas City Court of Appeals pointed out that the charter provided that all ordinances were referable, except those specifically described in Section 15 of the charter, and held that the framers of the charter intended that any ordinance (except those specifically exempted) was subject to referendum regardless of whether it might be classified as legislative or administrative.

The question has been briefed as to whether administrative ordinances are subject to referendum under the provisions of the Kansas City Charter. It is conceded that ordinances legislative in character (unless specifically exempted) are referable. We note in an annotation on the subject that "it is the general rule that initiative

and referendum provisions are applicable only to acts which are legislative in character, and are not applicable to those dealing with administrative or executive matters." 122 A.L.R. 769. Reference has heretofore been made to the case of Carson v. Oxenhandler, in which it is said: "The rule that only acts legislative in their nature are subject to referendum is particularly applicable in the field of municipal corporations. The legislative body of a municipality, whether it be designated a city council, board of aldermen, or otherwise, is frequently called upon to act in an administrative as well as a legislative capacity by the passage of ordinances and resolutions. From an early date in the history of the right of referendum it has been recognized that to subject to referendum any ordinance adopted by a city council, whether administrative or legislative, could result in chaos and the bringing of the machinery of government to a halt. * * * The general rule which has developed is stated in Seaton v. Lackey, 298 Ky. 188, 182 S.W.2d 336, 338, as follows: 'Although initiative and referendum provisions widely differ in their terminology, it is the general rule that they are applicable only to acts which are legislative in character, and not to those dealing with administrative or executive matters. * * *.'" 334 S.W.2d 339.

In Carson, the St. Louis Court of Appeals held that the provision of the St. Louis County Charter providing for referendum of "any ordinance" should be construed as intending that only ordinances of a legislative nature should be the subject of referendum. The court then decided that the ordinance under consideration was legislative in character and thus subject to referendum. The portion of the opinion in Carson which construes the charter provision in regard to the question of its application to ordinances legislative or administrative is a most learned and informative discussion and no doubt is of great assistance to anyone interested in the subject. However, we regard it as dictum for

the reason that the opinion held the ordinance under consideration to be legislative in character which, without question, was subject to referendum.

In the case before us we do not consider it necessary or proper to construe the charter provision and determine whether administrative ordinances are subject to referendum thereunder. This for the reason that we have decided that the ordinance in question is legislative in nature, and it is conceded that an ordinance of that character is subject to referendum. Therefore, any construction of the charter provision would be dictum.

"In reference to what constitutes legislative and what administrative action in connection with restriction of the power of initiative or referendum to legislative matters it has been said that action relating to subjects of permanent and general character are usually regarded as legislative, and those providing for subjects of temporary and special character are regarded as administrative. * * * The test of what is a legislative and what is an administrative proposition * * * has further been said to be whether the proposition is one to make new law or to execute law already in existence. Again, it has been said: 'The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.'" 5 McQuillan, Municipal Corporations, 3rd Ed., § 16.55, pp. 254–256.

No case has been cited (and we have found none) which involves the same situation as the one before us. Missouri cases on the subject are Carson, supra, in which an ordinance authorizing the county to enter into a cooperation agreement with its Housing Authority was held legislative, and State ex rel. Wilkinson v. Edwards, 305 Mo. 431, 266 S.W. 127, wherein an ordinance authorizing the city counsellor to

institute condemnation action to acquire a bridge approach was also held to be legislative.

■ We readily agree that the ordinance before us has the appearance, upon casual examination, of an administrative one. If, instead of fluoridation equipment, it had approved a contract for the purchase of a pump for routine use by the water department, we would unquestionably hold it to be administrative because, as a usual rule, ordinances providing for the purchase of equipment are administrative. However, we must not restrict ourselves to a casual examination of the ordinance but must look to its substance and determine the real purpose thereof and that which it will accomplish.

■ If the first ordinance introduced had been passed we do not see how anyone could reasonably have contended that it would not have been legislative in character. This because it provided a new declaration of public policy for the permanent practice of fluoridation of the water furnished residents of the city and made provisions for the means of putting that policy into effect. If we are correct in the foregoing conclusion, that ordinance would have been subject to referendum. However, it was apparently abandoned in committee and instead a resolution containing the same provisions was introduced and adopted. We do not think that resolution had any lawful effect. In matters of that nature the council can only act by ordinance. See Charter Sections 1(61) and 2. It is significant that the defendant does not contend that it had any legal efficacy. And the resolution was not subject to referendum. Charter Section 430.

■■ Shortly thereafter the ordinance in question was adopted. It is stipulated that it "was the first ordinance passed by the City Council of Kansas City, Missouri, which made possible the addition of fluorides to the municipal water supply of said city." As stated, it appeared to be a routine ordinance for the purchase of equipment but, actually, it would accomplish much more. That ordinance legally inaugurated for the first time the practice of fluoridating the Kansas City water supply. It did so as effectively as could have been done if the first ordinance, so providing, had been enacted. We take judicial notice of the fact that the question of fluoridating the water supply has been a highly controversial one. If we should overlook the real substance of this ordinance and hold it to be administrative, the voters (assuming, but not deciding, that an administrative ordinance is not referable) would be denied the right to refer it simply because of the type of ordinance finally adopted. The maneuver within the council of abandoning the first ordinance and thereafter adopting the resolution and purchase ordinance may or may not have been conceived in order to preclude the right of referendum in regard to this matter, but, regardless of the intent, the result would have been the same.

Defendant makes the contention that the ordinance under consideration is administrative rather than legislative because it is in accord with the long-established policy of Kansas City of adding medicinal compounds to the water supply in the interest of the public health. It is said that (1) chlorine is added for the "medicinal purpose to attack biologicals in the water"; and (2) aluminum sulphate and ferric sulphate are added for the "medicinal purposes to coagulate macroscopic matter in suspension in the water." We think the addition of fluorides goes beyond the policy established by the addition of the chemicals herefore specified. Those now being added are used for the purpose of their effect upon the water, i. e., making it pure and palatable, while the sole purpose of adding fluorides is for the therapeutic effect it will have upon the person drinking the water. This contention is ruled against defendant.

For the reasons heretofore stated, we have concluded that Ordinance No. 27271

is legislative in character and effect and is therefore subject to referendum.

The judgment is reversed and cause remanded with directions to the trial court to issue a peremptory writ of mandamus as prayed for in the petition.

All concur.