Edgar T. ANDERSON, Alfred Davidson, and Frederick T. Allen, as individuals and on behalf of a committee of petitioners of the City of Columbia, Missouri, Appellants,

v.

Robert C. SMITH, Clyde R. Cunningham, Roy G. Wiley, Ira L. Davis, and Carl L. Brady, Individually, and as constituting the City Council of the City of Columbia, Missouri, and, B. D. Simon, Jr., John C. Crighton, Charles J. Proctor, Dorsey M. Russell, and Dell Keepers, individually, and as constituting the Board of Commissioners of the Land Clearance for Redevelopment Authority, Columbia, Missouri, Respondents.

STATE of Missouri ex rel. Edgar T. ANDERSON, Alfred Davidson and Frederick T. Allen, as individuals and on behalf of a committee of petitioners of the City of Columbia, Missouri, Appellants,

v.

Robert C. SMITH, Clyde R. Cunningham, Roy G. Wiley, Ira L. Davis, and Carl L. Brady, individually, and as constituting the City Council of the City of Columbia, Missouri, Respondents.

Nos. 23852–23854.

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1964.

Michael J. Trombley, Columbia, J. David Collins, Edwards, Hess & Collins, Macon, for appellants.

George F. Nickolaus, City Counselor, Carl F. Sapp, Columbia, for respondents.

HUNTER, Judge.

Plaintiffs, as property owners, citizens, taxpayers, and electors of the City of Columbia, Missouri, filed two suits in the Circuit Court of Boone County against the City Councilmen of Columbia, individually as members of the city council.[1]

The first filed suit (case number 45975) was for a declaratory judgment and injunction. The judgment of the trial court denied the requested injunction and in effect denied plaintiffs their requested declaration of rights because the identical legal questions are presented in case number 45976. While plaintiffs appealed from this judgment they have abandoned that appeal by their failure to present any contentions of error or other objection thereto in their briefs, and that appeal should be dismissed.

In the second suit, case number 45976, in Count I plaintiffs sought a peremptory writ of mandamus requiring defendants, members of the city council, to perform their alleged duties under Article XVIII, Sections 132, 134 and 135 of the Home Rule Charter for the City of Columbia, Missouri

relative to an initiative petition submitted to them by plaintiffs. In Count II plaintiffs sought substantially the same relief as in Count I but with regard to a referendum petition submitted by them to defendants and not acted on and denied by defendants.

■ The judgment entered in case number 45976 was in favor of defendants on Count I, refusing to require the city council to enact the ordinance proposed in the initiative petition or to submit it to a vote of the electors of the city. The judgment was in favor of plaintiffs on Count II, requiring defendants to either repeal Ordinance No. 1788 or to submit it to the vote of the electors. Plaintiffs appealed from the judgment on Count I and defendants appealed from the judgment on Count II. However, in their briefs defendants have not presented any contentions of error regarding the judgment on Count II and thereby have abandoned their appeal therefrom.

Remaining for our determination on this appeal is plaintiff's appeal from the judgment entered on Count I, case No. 45976 concerning the refusal of the trial court to order the city councilmen to enact a certain proposed ordinance contained in an initiative petition or to submit it to the voters of the city.

A chronological statement of the background of the present question is necessary to an understanding of the appellate contentions of the parties.

In 1951 our state legislature enacted the "Land Clearance For Redevelopment Authority Law" (Sections 99.300 ff., RSMo, 1959, V.A.M.S.). This law found and declared that there exist in localities throughout the state blighted and insanitary areas, injurious to public health, safety and morals; that such condition is beyond remedy and control solely by regulatory process and private enterprise. It provided: "There

---

1. While this appeal was pending John F. Longwell, Richard Knipp and Dorsey Bass were substituted as parties plaintiff in lieu of Robert C. Smith, Carl L. Brady and Roy G. Wiley, having replaced the latter three as new councilmen of Columbia, Missouri.

is hereby created in each community (as herein defined) a public body corporate and politic, to be known as the 'Land Clearance For Redevelopment Authority' of the community; provided, however:

"(1) That such authority shall not transact any business or exercise its powers hereunder until or unless the governing body shall approve (by resolution or ordinance as herein provided) the exercise in such community of the powers, functions and duties of an authority under this law; and provided further that, if it deems such action to be in the public interest, the governing body may, instead of such resolution or ordinance adopt a resolution or ordinance approving the exercise of such powers, functions and duties by the community itself or by the housing authority, if one exists or is subsequently established in the community, and in such event, the community or housing authority, as the case may be, shall be vested with all the powers, functions, rights, duties and privileges of a land clearance for redevelopment authority under this law.

"(2) The governing body of a community shall not adopt a resolution or ordinance pursuant to subdivision (1) above unless it finds:

"(a) That one or more blighted, or insanitary areas (as herein defined) exist in such community; and

"(b) That the redevelopment of such area or areas is necessary in the interest of the public health, safety, morals or welfare of the residents of such community."

The state statute above mentioned in Section 99.320(6) defined the statutory term "community" as follows: "'Community' * * * any county or municipality, except that such term shall not include any municipality containing less than seventy-five thousand inhabitants until the governing body thereof shall have submitted the proposition of accepting the provisions of this law to the qualified voters therein at an election called and held as provided by law for the incurring of indebtedness by such municipality, and a majority of the voters voting at such election shall have voted in favor of such proposition."

Columbia, Missouri is a municipal corporation with a population which has always been substantially less than 75,000. Pursuant to Section 99.320(6) of the mentioned statute the City Council of Columbia on April 23, 1956, enacted Ordinance No. 485 finding that one or more blighted or insanitary areas exist in Columbia and that the redevelopment thereof is necessary in the interest of the health, safety, morals or welfare of the city, and in effect accepted the provisions of the Land Clearance For Redevelopment Authority Law subject to a vote of the people thereon. Ordinance No. 485 provided for a special election to be held on May 29, 1956, to submit to the electors of Columbia the proposition of whether they accept the provisions of the Law, and "approving the exercise of the powers, duties, and functions of said law by a land clearance for redevelopment authority * * * and establishing such authority by finding that one or more blighted or insanitary areas as defined in said law exist in the City of Columbia, and that the redevelopment of such area or areas is necessary in the interest of the health, safety, morals and welfare of the residents of said City."

The special election was held on May 29, 1956, and the proposition passed as submitted pursuant to the ordinance.

While the record does not indicate fully what occurred thereafter, it does disclose that the requisite five members were appointed by the Mayor of Columbia to the Land Clearance For Redevelopment Authority and that they assumed the duties of the office.

It is the above mentioned Ordinance, No. 485, electing to accept the provisions of the Land Clearance For Redevelopment Authority Law, by deeming Columbia to be a defined "community" thereunder and ap-

proving the exercise of powers thereunder by a Land Clearance For Redevelopment Authority, passed on April 23, 1956, and approved by the people at the special election of May 29, 1956, that plaintiffs on June 9, 1962, sought to have repealed through the initiative process. Article XVII, Section 127, of the City Charter of Columbia provides for the initiative process, "(they) shall have power to propose any ordinance", except one appropriating money or authorizing the levy of taxes.

The indicated cause of plaintiff's action was that on May 2, 1962, an ordinance (No. 1788) was introduced providing for the undertaking of surveys and plans for an urban renewal project (Midtown Redevelopment Project) and authorizing the filing of an application with the United States government for an advance of funds therefor in the sum of $134,777.00 and *providing for the submission of the completed plans and surveys to an election.* There was opposition to the proposed Midtown Redevelopment Project by plaintiffs, and others, who after being unsuccessful in efforts to prevent Ordinance No. 1788 from being enacted by the Council, on May 21, 1962, sought to invoke the referendum process to have it submitted to the people of Columbia in an election (although the ordinance itself provided for the submission of the completed plans and surveys to an election). The city council by a 4 to 1 vote refused to repeal Ordinance No. 1788 and voted that it not be referred to the people. Plaintiffs also prepared and circulated initiative petitions and obtained the requisite number of signatures (which petitions the city clerk certified to be procedurally sufficient) proposing an ordinance which would repeal Ordinance No. 485. The city council voted to "ignore" the initiative petition. The following day plaintiffs filed the mentioned two lawsuits, numbered 45975 and 45976, respectively.

Plaintiffs' points I, II and III (a) are in effect assertions that the determination of the Columbia City Clerk that the initiative petition is sufficient procedurally cannot be inquired into in a mandamus action, and that this court does not have the power to examine the proposed initiative ordinance to determine its legality or constitutionality. Appellants only remaining contention is that the initiative process may be used to repeal an existing ordinance, and that the council and the people of Columbia do have the power and authority to pass an ordinance repealing Ordinance No. 485.

Defendants concede they are not challenging the signatures on the initiative petition, the time of filing it, or any other procedural matter. It is their position that the courts do have the right in a mandamus suit to examine a law proposed to be submitted to the electorate by the initiative or referendum process and that the City of Columbia by reason of the adoption of Ordinance No. 485 in 1956 became a defined "Community" in which the Missouri General Assembly had created a public body corporate and politic known as the "Land Clearance For Redevelopment Authority" of Columbia, Missouri; that the statutes do not provide for a reconsideration of that determination by the community and that the city council and electors do not possess authority to reverse the previous determination. Defendants also contend the ordinance proposed by the initiative petition to be submitted to the electorate is administrative in nature and not legislative and is thereby not subject to be repealed by the initiative process.

■ It is the general rule that initiative and referendum provisions are applicable only to acts, including ordinances, which are legislative in character, and are not applicable to those dealing with administrative or executive matters. State ex rel. Whittington v. Strahm, En Banc, Mo.Sup., 374 S.W.2d 127; State ex rel. Wilkinson v. Edwards, En Banc, 305 Mo. 431, 266 S.W. 127, Annotation, 122 A.L.R. 769. Ordinarily, if the ordinance or act sought to be repealed is legislative in nature so is the

repealing ordinance or act. State ex rel. Wilkinson v. Edwards, supra.

Some difficulty is occasionally experienced in applying the general rule. In State ex rel. Whittington v. Strahm, supra, our Supreme Court approvingly quoted 5 McQuillin, Municipal Corporations, 3rd Ed., #16.55, pp. 254–256: "In reference to what constitutes legislative and what administrative action in connection with restriction of the power of initiative or referendum to legislative matters it has been said that action relating to subjects of permanent and general character are usually regarded as legislative, and those providing for subjects of temporary and special character are regarded as administrative. * * * The test of what is a legislative and what is an administrative proposition * * * has further been said to be whether the proposition is one to make new law or to execute law already in existence. Again, it has been said: 'The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.' " In ruling the ordinance which concerned fluoridation of the water of Kansas City to be legislative in nature our Supreme Court stated, "This because it provided a new declaration of public policy for the permanent practice of fluoridation * * *." To the same general effect see, Carson v. Oxenhandler, Mo.App., 334 S.W.2d 394, holding that an ordinance authorizing St. Louis County to enter into a cooperative argument with the housing authority was a declaration of legislative policy and, hence, legislative in character.

■ We are persuaded that Ordinance No. 485 which was adopted by both the city council and the people of the City of Columbia is legislative in nature and not merely administrative or executive. It was an expression of the council and the people of the City of Columbia of their desire and decision to elect to become a "community"

under the state law and to adopt and to make the Land Clearance For Redevelopment Authority Law applicable to the City of Columbia. It was a new declaration of a fundamental public policy; namely, to have this state law establishing a land clearance and redevelopment situation include Columbia, Missouri.

The Land Clearance For Redevelopment Authority Law was before our Supreme Court En Banc in State on Information of Dalton v. Land Clearance For Redevelopment Authority, 364 Mo. 974, 270 S.W. 2d 44. In holding that the law was constitutional the court stated, loc. cit. 270 S.W.2d 56, "We conclude that the powers of the Authority, as defined in the Act, including the power to prepare plans, to carry out these plans after they have received the approval of the governing body, and to determine the fair price at which land within legislatively declared blighted or insanitary areas may be sold are administrative details and were properly delegated to Authority as an administrative agency of the governing body." We believe this language of our Supreme Court further indicates the legislative nature of such an ordinance as Ordinance No. 485 now before us which makes the initial and basic political determination to come under the provisions of the Redevelopment Authority Law rather than provide for carrying out the details of some prior enacted plan. Cf. Andrews v. City of San Bernardino, 175 Cal.App.2d 459, 346 P.2d 457, 459; Housing Authority v. Superior Court, 35 Cal.2d 550, 219 P.2d 457.

■ We pass to plaintiffs' contention that this court in a mandamus action cannot examine an ordinance proposed under the initiative process to determine its legality, i. e. whether it is unlawful. As noted in the State ex rel. Whittington v. Strahm decision, supra, and many others, courts can and do look at the ordinance in question to ascertain if it is truly legislative in nature rather than administrative or executive. In Kansas City v. McGee, 364

Mo. 896, 269 S.W.2d 662, 665, in approving the case of State ex rel. Cranfill v. Smith, 330 Mo. 252, 48 S.W.2d 891, 81 A.L.R. 1066, our Supreme Court stated: "The court (in the Cranfill case) held mandamus to be a discretionary writ and in that case would not be issued to compel a large expenditure of money to hold a useless election. The ruling in the case is sound law and supported by good authority."

In State ex rel. Cranfill v. Smith, En Banc, 330 Mo. 252, 48 S.W.2d 891, 892, 81 A.L.R. 1066, in an original mandamus proceeding for the adoption of an ordinance under the initiative provisions of the Charter of Kansas City seeking to compel the members of the city council to submit an ordinance to the electors of the city the court stated, "In determining whether the writ should be granted or denied, we need not decide whether the provision in the city's charter for the submission of a proposed ordinance to the electors is mandatory or merely directory, nor are we controlled by the general rule that courts will not inquire into the validity of an act of legislation until after it˙has become *fait accompli* and is clothed with the outward forms of law. Mandamus is not a writ of right. Its issuance lies in the sound judicial discretion of the court. Before granting the writ the court will look to the public interest which may be concerned, and act in view of all the existing facts and with due regard to the consequences. And the writ will be refused where, if granted, it would be unavailing, or where the act to be performed would be unlawful, for the court will not compel the performance of a vain or unlawful act. Ferris on Extraordinary Legal Remedies, §§ 196 and 204. In the recent case of State ex rel. Asotsky v. Regan, 317 Mo. loc. cit. 1221, 298 S.W. 747, loc. cit. 748, 55 A.L.R. 773, we said: 'If the ordinance were in fact unconstitutional, or was void for any other reason, that would be ·a complete defense to this action.˙ We would not impose upon Kansas City the burden and expense of submitting

to a vote an ordinance which would be of no effect if adopted.' "

Plaintiffs cite several decisions such as State ex rel. Sharpe v. Hitt, Auditor, 155 Ohio St. 529, 99 N.E.2d 659, to the general effect that the people of a municipality can, through the initiative, enact a measure conflicting with legislation previously passed by the council even though they thereby nullify the earlier action of the council. In the Sharpe case after so stating, that court qualified by saying, loc. cit. 664 of 99 N.E.2d: "[S]o long as the question upon which they enact such an initiative ordinance is within the power of the municipality to control by legislative procedure." Thus, if the city council could not effectively free itself of the state statute by the proposed initiative ordinance because it was not within the power of the municipality to do so we do not believe that the court in the Sharpe case would grant mandamus the effect of which would be to force a useless and ˋcostly election. See, Housing Authority v. City of Los Angeles, 38 Cal.2d 853, 243 P.2d 515; State ex rel. Asotsky v. Regan, 317 Mo. 1216, 298 S.W. 747, 55 A.L.R. 773; 6 McQuillin, Mun. Corp., (3rd Ed.) #21.10.

■■ We come to the crucial question. Can this election of the City of Columbia made in 1956 both by ordinance and by vote of its people to accept and thereby come under the provisions of this state law by becoming a˙"community" as defined ⁺herein now be revoked or cancelled by the revocation of Ordinance No. 485 by means of the pending initiative proceedings? If not, then its revocation would serve no purpose of indicated interest to plaintiffs and mandamus, a discretionary writ, should be denied.

By the enactment of Sections 99.300 to 99.660, RSMo 1959, V.A.M.S., the General Assembly declared the existence in localities throughout the state of blighted and insanitary areas constituting a serious and growing menace to the public health, safety, morals and welfare of the residents

of this state. In the state public interest it declared the necessity for the provisions contained in the Land Clearance For Redevelopment Law and made them automatically applicable to all cities of more than 75,000 population. Cities with less than 75,000 population were given the opportunity (option) of deciding whether or not they desired to accept the provisions of this law. Columbia, by becoming a "community" thereunder both by action of its city council and by vote of its people accepted this law and thereby became subject to it just as is any city with a population of over 75,000. It is not a question of the people of the community not being given a voice, for it was the people by their vote who recognized that in their community there exists one or more of these blighted and insanitary areas and approved the exercise of powers by the Authority under the provisions of the state statute.

Having become subject to this state statute how can this, or any municipality subject to it, become free of it? The law was not enacted to effect solely municipal objectives. These were state purposes to be fulfilled by this statute. It is our view that just as with other state laws, it remains applicable to a municipality which has accepted it until the legislature repeals it or unless or until this statute or another properly enacted statute authorizes a municipality to withdraw or provides a means for a municipality to withdraw from its applicability. We do not believe it was the intent of the state legislature in enacting the statute in the light of a state need to permit a municipality which has found the local need for it, solely by municipal action to be able to withdraw itself from the provisions of that statute established to cure or better those very conditions causing the need. Cf. State ex rel. Great Falls Housing Authority v. City of Great Falls, 100 Mont. 318, 100 P.2d 915.

One purpose of the initiative ordinance was to abolish the existing Land Clearance For Redevelopment Authority of Columbia. The statute before us does not provide a

prescribed manner for dissolving this public corporation thusly created, once empowered to exercise the power set out in the state statute, regardless of the size of the city or county in which it was created. Created as it was, by the State Legislature, and designed to carry out a declared public policy of the legislature, it would seem to be the intent of the statute that this public corporation would not be dissolved except at such time and in such manner as its creator, the State Legislature, shall determine and provide. See, Western National Bank of Cicero v. Village of Kildeer, 19 Ill.2d 342, 167 N.E.2d 169 (5-6); State ex rel. Consolidated School District No. 8 of Pemiscot County v. Smith, 343 Mo. 288, 121 S.W.2d 160 (2); Ciulla v. State, 191 Misc. 528, 77 N.Y.S.2d 545, 553.

For the reasons set out above the appeal in case No. 45975 is dismissed. The judgment of the trial court in Case No. 45976 is affirmed.

All concur.