CASEY'S MARKETING COMPANY,
Respondent,

v.

LAND CLEARANCE FOR REDEVEL-
OPMENT AUTHORITY OF INDEPEN-
DENCE, MISSOURI, et al., Appellants.

No. WD 60924.

Missouri Court of Appeals,
Western District.

Jan. 14, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 27, 2003.

Application for Transfer Denied
April 22, 2003.

Steven E. Mauer, Kansas City, MO, for Appellant.

Roger W. Hershey, Kansas City, MO, for Respondent.

Before PAUL M. SPINDEN, P.J., PATRICIA A. BRECKENRIDGE and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Respondent Casey's Marketing Company (Casey's) filed a declaratory judgment action to determine whether property that it owns in Independence, Missouri, qualifies for a tax abatement certificate under

an urban renewal plan established by the City of Independence more than thirty years ago. After the parties submitted stipulated facts and filed cross-motions for summary judgment, the circuit court declared that Casey's should receive the tax abatement certificate. This appeal followed. We affirm.

## I. Factual and Procedural Background

### A. Urban Renewal in Independence

Over fifty years ago, the General Assembly recognized the need to address urban blight and unsanitary conditions when it enacted the Land Clearance for Redevelopment Authority Law (the Redevelopment Law), § 99.300 through § 99.715.[1] To that end, the Redevelopment Law created a Land Clearance for Redevelopment Authority (LCRA) in each community governed by the Law. § 99.330.

As enacted, the Redevelopment Law allows each LCRA to acquire property classified as blighted and to make the property available for redevelopment. *See* § 99.420. Before a community's LCRA can begin its work, however, the community's governing body, and in some cases its voters, must approve the exercise of LCRA power in that community. *See* §§ 99.320(6) and 99.330.

In 1958, the Independence City Council adopted an LCRA enabling ordinance. The same year, Independence voters approved a measure accepting the provisions of the Redevelopment Law. Originally, the Independence City Council exercised the community's LCRA power directly. But in 1960, the City Council transferred the exercise of that power to a separate LCRA, as the Redevelopment Law allows.

Independence subsequently adopted multiple urban renewal plans under the

Redevelopment Law. This case centers on an urban renewal plan for the Old Town Redevelopment Area, Project No. MO A–8. (the Old Town plan). The City Council approved the Old Town plan in the early 1970s. By its terms, the Old Town plan runs for an initial term of twenty years, followed by automatic renewals for successive five-year terms, "unless by vote of the then owners of a majority of the square foot within the area, and by approval of the governing body of the locality, it is agreed to terminate the plan at the end of any such period." The owners have never voted on termination.

In 1975, the City Council adopted Resolution 928, authorizing the LCRA to "close out the neighborhood development program, MO. A–8, and acknowledging that the assets and liabilities become the property" of the city. In 1977, the City Council adopted Ordinance No. 4830, accepting all remaining responsibilities from the LCRA for a separate urban renewal project. The city contends that these two documents establish that neither the Old Town plan nor the LCRA has existed since the 1970s. The ordinance recognizing the LCRA remains on the books in the Independence city code, however.

Both the Old Town plan and the LCRA have been inactive for several years. The terms of office of each of the persons last appointed to serve as LCRA commissioners have expired and the LCRA currently has no commissioners. The city likewise has no staff person responsible for administering the Old Town plan. It had not enforced or otherwise taken any action to implement the Old Town plan for at least seventeen years before Casey's filed its declaratory judgment action. The city has not granted any tax abatements to other properties within the boundaries of the Old

---

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

Town plan. Except for Casey's, no other property owner has requested a tax abatement.

## B. Casey's Abatement Application

In 1998, Casey's bought unimproved property located within the boundaries of the Old Town plan. Casey's intended to build a convenience store on the property. When it bought the property, Casey's was unaware of the Old Town plan or the possibility of any tax abatement. After buying the property, however, Casey's discovered that the property fell within the boundaries of the Old Town plan. Before starting construction on its convenience store, Casey's submitted an abatement application to the Independence City attorney, who agreed to take delivery of it in lieu of the LCRA. In its application, Casey's claimed that its property qualified for a tax abatement under § 99.700. Casey's further asserted that its new construction was in accordance with the Old Town plan. The city refused to process the application, contending that it had abandoned its LCRA years before Casey's submitted its application. At some point after submitting its application, Casey's went ahead and built its store on the property.

## C. The Declaratory Judgment Action

After failing to win approval of its abatement application, Casey's filed a declaratory judgment action in the circuit court. It asked the court to declare the following: 1) either that the LCRA currently exists and has existed continuously since at least October 17, 1960, or else that the city has elected to exercise LCRA power itself; 2) if the LCRA still exists, then the mayor has a duty to appoint commissioners to the LCRA board; 3) that the Old Town plan still exists and has existed continuously since before June 19, 1972; 4) that Casey's has a right to an abatement certificate for

the property under § 99.700; 5) that Casey's has a right to an assessed value statement for the property from the county assessor; and 6) that the LCRA or the city acting in its capacity as the LCRA, each has the duty to take all actions required by the Redevelopment Law to grant the abatement for the property.

The parties submitted a stipulation of facts to the circuit court and filed cross-motions for summary judgment. The circuit court subsequently issued a summary declaratory judgment granting Casey's motion and denying appellants' motion. In its judgment, the circuit court issued all of the declarations requested by Casey's in its petition for declaratory judgment.

Appellants raise two points on appeal. In their first point, they argue that § 99.700 (the tax abatement provision) only applied to the city after the General Assembly amended it in 1986. They maintain that the LCRA and the Old Town plan ceased to exist long before the General Assembly amended § 99.700 in 1986, and that any application of § 99.700 in this case violates the prohibition against retrospective operation of statutes.

In their second point, appellants argue that even if § 99.700 applies to the city in this case, Casey's did not satisfy the requirements of § 99.700 because it never demonstrated that its project was "in accordance" with the Old Town plan, as required.

## II. STANDARD OF REVIEW

Our review of the summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Accordingly, we need not defer to the trial court's order granting summary judgment. *Id.* We "review the record in the light most favorable to the party against whom judgment was entered." *Id.* We "accord the

non-movant the benefit of all reasonable inferences from the record." *Id.*

### III. LEGAL ANALYSIS

### A. Section 99.700 Applies to the Old Town Plan

Casey's seeks tax abatement under § 99.700. Section 99.700 provides:

> In any constitutional charter city any person may apply to the land clearance for redevelopment authority of the city for certification that designated real property which he owns, rents, or leases is in a blighted area as defined in section 99.320, and declared to be a blighted area as provided in section 99.430. Upon receiving plans, as they may hereby require, which show that the person applying is engaged in new construction or rehabilitation of the designated real property in accordance with an approved redevelopment or urban renewal plan, the authority shall issue a certificate of qualification for tax abatement to the applicant.

As enacted in 1973, § 99.700 originally applied only to the city of St. Louis.[2] An intervening amendment in 1979 extended § 99.700 to Kansas City as well.[3] As amended in 1986, § 99.700 now applies to "any constitutional charter city" in the state. § 99.700. The parties agree that this designation includes Independence. But appellants contend that both the LCRA and the Old Town plan ceased to exist long before the General Assembly amended § 99.700 in 1986, making it impossible for Casey's to obtain the abatement that it now seeks.

### 1. The City Lacks Authority to Dissolve its Duly–Established LCRA

Appellants first argue that Independence dissolved its LCRA nine years before the 1986 amendment to § 99.700 and that Casey's therefore cannot obtain certification under § 99.700 for property acquired after the dissolution.

The problem with this argument is that the community has no power to dissolve its LCRA once it has been activated. In *Anderson v. Smith,* 377 S.W.2d 554 (Mo. App.1964), this court ruled that voters in Columbia could not dissolve their LCRA after accepting the provisions of the Redevelopment Law. *Id.* at 560. The court said:

> It is our view that just as with other state laws, it remains applicable to a municipality which has accepted it until the legislature repeals it or unless or until this statute or another properly enacted statute authorizes a municipality to withdraw or provides a means for a municipality to withdraw from its applicability. We do not believe it was the intent of the state legislature in enacting the statute in the light of a state need to permit a municipality which has found the local need for it, solely by municipal action to be able to withdraw itself from the provisions of that statute established to cure or better those very conditions causing the need.

*Id.*

■ Therefore, as a matter of law, the city has no authority to dissolve its duly

---

**2.** *See* § 99.700, RSMo (Cum.Supp.1973) (referring only to "St. Louis City" in section heading and making section applicable to "any city having a population of more than five hundred fifty thousand, and not within a county ...," criteria that fit only the city of St. Louis at the time).

**3.** *See* § 99.700, RSMo (Supp.1979) (adding Kansas City to section heading and making it applicable to any city "having a population of more than four hundred thousand ...").

established LCRA and the LCRA continues to exist.

## 2. By its Express Terms, the Old Town Plan Still Exists

■ Appellants also argue that the city "closed out" the Old Town plan in 1975, leaving no urban renewal plan to which § 99.700 might apply in this case. As noted previously, however, the Old Town plan expressly states that it automatically renews for successive five-year terms, "unless by vote of the then owners of a majority of the square foot within the area, and by approval of the governing body of the locality, it is agreed to terminate the plan at the end of any such period." It is undisputed that the owners have never voted to terminate the Old Town plan. Therefore, the plan likewise continues to exist.

Even if the LCRA and the Old Town plan continue to exist, however, appellants contend that they remain unaffected by the 1986 amendment to § 99.700, based upon the presumption that laws operate prospectively and based upon the constitutional prohibition against laws that operate retrospectively. We disagree that the law operates retrospectively here.

## 3. Application of § 99.700 in this Case Does Not Violate the Constitutional Prohibition Against Laws that Operate Retrospectively

■ "Statutes are generally presumed to operate prospectively, 'unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication.'" *Dep't of Soc. Servs. v. Villa Capri Homes, Inc.*, 684 S.W.2d 327, 332 (Mo. banc 1985) (quoting *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 34 (Mo. banc 1982)). If this presumption is overcome, the focus turns to whether the statute operates retrospectively. *Id.*

■ The Missouri Constitution forbids laws that operate retrospectively. *Mendelsohn v. State Bd. Of Registration for the Healing Arts*, 3 S.W.3d 783, 785 (Mo. banc 1999); MO. CONST., art. I, § 13. "A retrospective law takes away or impairs vested or substantial rights acquired under existing laws, or imposes new obligations, duties, or disabilities with respect to past transactions." *Mendelsohn*, 3 S.W.3d at 785–86. Because a litigant has no vested rights in matters of procedure, procedural laws may be applied retrospectively without violating the constitutional ban on retrospective laws. *Id.* at 786. The constitutional ban on retrospective laws likewise does not apply to laws that waive the rights of the state. *Savannah R–III Sch. Dist. v. Pub. Sch. Ret. Sys.*, 950 S.W.2d 854, 858 (Mo. banc 1997). Thus, we "will normally apply a law retrospectively only where it is procedural in nature or where it waives the rights of the state and the legislature has provided that it will have retrospective effect." *Wellner v. Dir. of Revenue*, 16 S.W.3d 352, 354 (Mo.App. W.D.2000).

The General Assembly appears to have intended that the 1986 amendment to § 99.700 operate prospectively. As Casey's acknowledges, the statute does not expressly state that it operates retrospectively. And none of the language used in the statute suggests a retrospective operation "by necessary or unavoidable implication." *Villa Capri Homes*, 684 S.W.2d at 332. That being so, we presume that the 1986 amendment to § 99.700 must operate prospectively.

■ The fact that Casey's seeks a tax abatement under the 1972 Old Town plan does not render the 1986 amendment to § 99.700 retrospective in operation. The prohibition against laws that operate retro-

spectively " 'does not mean that no statute relating to past transactions can be constitutionally passed, but rather that none can be allowed to operate retrospectively so as to affect such past transactions *to the substantial prejudice of parties interested.*' " *Fisher v. Reorganized Sch. Dist. No. R–V of Grundy County,* 567 S.W.2d 647, 649 (Mo. banc 1978) (quoting *Willhite v. Rathburn,* 332 Mo. 1208, 61 S.W.2d 708, 711 (1933)). And as we have explained already, the matter must involve a vested right. On this subject, the Missouri Supreme Court has said:

> [A] vested right ... must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another.... In general, neither persons nor entities have a vested right in a general rule of law that would entitle either to insist that a law remain unchanged.

*Beatty v. State Tax Comm'n,* 912 S.W.2d 492, 496 (Mo. banc 1995) (internal quotation and citation omitted).

Although the city complains that it never contemplated the 1986 amendment to § 99.700 when it approved the Old Town plan, the city cannot rely upon "an anticipated continuance of the existing law" or "insist that [the] law remain unchanged." *Id.*

■ In this case, the application of § 99.700 to the Old Town plan neither impairs a vested right nor substantially prejudices the city. The city's right to any tax revenue from Casey's did not accrue until well after 1986. Casey's sought a tax abatement from the city thirteen years after the 1986 amendment for taxes that accrued after it purchased the property in 1998. But until Casey's purchased the property and became subject to taxation on it, the prospect of such tax payments remained uncertain. *Cf. M & P Enters., Inc. v. Transamerica Fin. Servs.,* 944 S.W.2d 154, 160 (Mo. banc 1997) ("Any purported right of the lender to redeem the property in question was contingent upon the property being sold at a delinquent tax sale, an uncertain event. Because any purported right of the lender to redeem the property was contingent upon the happening of an uncertain event, the lender had no vested right of redemption."). Accordingly, the city had no vested right in such future taxes.

While the city might have cause to complain if a landowner sought an abatement for taxes already paid *before* the effective date of the amendment, this is not such a case.

As in *Fisher,* we also do not discern any substantial prejudice here. 567 S.W.2d at 649. As even appellants appear to acknowledge in their brief, the city could have amended the Old Town plan to address the 1986 amendment to § 99.700. It did not do so. Point denied.

We next examine whether Casey's has complied with § 99.700.

**B. Has Casey's Satisfied the Requirements for Obtaining an Abatement Under § 99.700?**

Appellants contend that Casey's failed to comply with § 99.700 in any event because Casey's did not show that it was engaged in new construction "in accordance with an approved redevelopment or urban renewal plan," as required for tax abatement. Appellants do not argue that the Casey's store is outside the parameter of the type of commercial uses presented under the plan. Appellants identify two procedural provisions of the Old Town plan, which they claim that Casey's did not follow.

Appellants claim that Casey's failed to satisfy section F of the Old Town plan. In

pertinent part, section F says that "[n]o property may be acquired for clearance and redevelopment until and after it has been specifically identified in an appropriate supplement to the plan." Relying upon this provision, appellants argue that Casey's should have obtained an amendment to the plan from the LCRA before acquiring the property for clearance and redevelopment. Appellants' argument ignores the plain language of § 99.700, which assumes that the applicant already owns the property when it applies for an abatement: "In any constitutional charter city any person may apply to the land clearance for redevelopment authority of the city for certification that designated real property *which he owns, rents, or leases* is in a blighted area...." § 99.700 (emphasis added).

Appellants likewise claim that Casey's failed to comply with Section II–R–201.2 of the Old Town plan. It says:

> *Prior approval of plans.* Plans for the proposed use of vacant land, for changes in land use, and for the proposed rehabilitation of structures within the project areas shall be submitted to the Authority for review and approval prior to commencement of work thereunder.

It appears that Casey's submitted its abatement application before starting construction. The parties have stipulated that "[a]t the time of the filing of [Casey's] Abatement Application, [Casey's] was engaged in new construction on the Property *that had not yet commenced.*" (emphasis added). Casey's abatement application likewise indicates that Casey's submitted its application before starting construction. Casey's submitted its application on March 31, 1999, indicating that it was "about to begin construction" and providing an "Estimated Commencement Date" of May 15, 1999.

Of course, Casey's also has stipulated that it did not obtain LCRA approval be-

fore starting construction. But the problem for appellants is that they never would have approved Casey's proposal, whether it was in accordance with the Old Town plan or not. They consistently denied that the LCRA or the Old Town plan even existed. By letter dated June 1, 1999, the city's attorney informed Casey's attorney that "the City does not intend to process your client's application. The City chose to abandon its LCRA years ago and the City Manager does not believe that this is the appropriate project to attempt to revive it." As a result, we cannot say that Casey's failed to act "in accordance" with the plan, as required under § 99.700. Point denied.

## IV. CONCLUSION

After reviewing the briefs submitted by the parties and the record on appeal, we affirm the circuit court's judgment.

PAUL M. SPINDEN, P.J., PATRICIA A. BRECKENRIDGE, J. concur.