

# In the Missouri Court of Appeals
# Eastern District

## DIVISION ONE

| | | |
|---|---|---|
| DANIEL PHILLIPS,<br>VIVIAN L. EVELOFF,<br>JULIA KING MULLER, and<br>EARL K. SHRECKENGAST, | ) ) ) ) | No. ED103232 |
| | ) | |
| Appellants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JILL L. MEDINTZ, | ) | |
| | ) | |
| Plaintiff, | ) ) ) | Appeal from the Circuit Court<br>of St. Louis County<br>14SL-CC03784 |
| vs. | ) | |
| | ) | |
| CITY OF CLAYTON, MISSOURI,<br>JUNE FRAZIER, in her capacity as<br>CITY CLERK,<br>WORP/CA CLAYTON LLC,<br>and THE CROSSING IN CLAYTON<br>REDEVELOPMENT CORPORATION, | ) ) ) ) ) ) ) | Honorable Thomas J. Prebil |
| Respondents. | ) | FILED:  December 22, 2015 |

## OPINION

Daniel Phillips, Vivian L. Eveloff, Julia King Muller, and Earl K. Schreckengast

(collectively "Residents") appeal from the trial court's grant of summary judgment in favor of

the City of Clayton, Missouri, and June Frazier (collectively "City") holding that Ordinance Nos.

6339, 6340, and 6341 are not subject to referendum under the City of Clayton's Charter and that

Residents have not established that they are entitled to the issuance of a writ of mandamus under the City Charter.  We affirm.

## Factual and Procedural Background

In 2010, Clayton's board of aldermen, [1] pursuant to Chapter 89, RSMo 2000, adopted the "Downtown Clayton Master Plan Update and Retail Strategy" ("Master Plan"), [2] which sought to "[e]ncourage residential growth within walking distance of the Clayton and Forsyth MetroLink Stations."

In 2014, GTE Properties, LLC ("GTE") sought to build a 26-story, $72,000,000 residential apartment tower ("Tower") at the southeast corner of Bonhomme and Meramec Avenues located within an area where the Master Plan called for an increase in high density residential development.

On July 22, 2014, the board of aldermen held a public hearing on Bill No. 6454.  This bill found that the designated area where GTE intended to construct the Tower was "blighted," approved a development plan for the redevelopment of the property, and authorized City staff to negotiate a development agreement with GTE.  The development plan also included a tax impact statement that expressly provided "[r]eal property tax abatement will be granted pursuant to a development agreement between the City and the Developer."  At this hearing, letters were received in support of the project and the proposed tax abatement from various groups and, on the same day, the board of aldermen passed Bill No. 6454, which became Ordinance No. 6328.

On September 9, 2014, the board of aldermen held public hearings on Bill Nos. 6465

---

[1]  Unless otherwise indicated, all further statutory references are to RSMo 2000 as amended.
[2]  Clayton's board of aldermen consists of six aldermen and a mayor all of whom have equal voting power.

2

and 6466 which were proposals to rezone the property upon which the Tower would be constructed as well as the proposed development plan for the Tower. In addition, Bill No. 6467 was on the agenda as a "Report from the City Manager." Bill No. 6467 was intended to approve a development agreement between the City and GTE to redevelop the subject property. The development agreement provided that the developer would make payments in lieu of taxes ("PILOTS") based on 50% of the assessed valuation of the property for the first ten years, and payments based on 50% of the fair market value for the following ten years.

At the conclusion of the hearing on the subject matter contained in the aforementioned bills and after a lengthy public comment period, one of the aldermen made a motion to table the Bills. The motion passed. None of the aldermen introduced any of the bills at the September 9, 2014 meeting and none of the bills were on the agenda for a first reading. The bills were then referred back to the City Plan Commission to consider revisions to the Tower plan. On September 15, 2014, the Plan Commission voted to recommend approval of the rezoning and the Planned Unit Development with revisions.

On September 23, 2014, the board of aldermen held their final hearing. The bills appeared on the agenda under "Unfinished Business." After hearing comments from the public, Alderman Harris introduced Bill No. 6465 (relating to rezoning) and Alderman Harris moved that the bill be read for the first time by title only. The motion passed unanimously and the bill was read for the first time. The mayor moved that the board of aldermen approve consideration of Bill No. 6465 for final passage at that meeting. That motion was seconded and approved unanimously. Bill No. 6465 was then read for the second time and was passed unanimously by the board of aldermen, and became Ordinance No. 6339.

After passage of Bill No. 6465, Bill No. 6466 (relating to the development plan) was

introduced and Alderman Harris moved that the bill be read for the first time by title only. The motion passed unanimously and the bill was read for the first time. The mayor moved that the board of aldermen approve consideration of Bill No. 6466 for final passage at that evening's meeting. That motion was seconded and approved unanimously. Bill No. 6466 was then read for the second time and was passed unanimously by the board of aldermen, and became Ordinance No. 6340.

Finally, Alderman Harris introduced Bill No. 6467 and moved that the bill be read for the first time by title only. The motion passed unanimously and the bill was read for the first time. Again, the mayor moved that the board of aldermen approve consideration of Bill No. 6467 for final passage at that evening's meeting. That motion was seconded and approved unanimously. Bill No. 6467 was then read for a second time. The bill was passed by the board of aldermen by a vote of six to one, and the bill became Ordinance No. 6341.

Residents submitted to June Frazier ("Frazier"), City Clerk for Clayton, three referendum petitions requesting that Ordinance Nos. 6339, 6340, and 6341 either be repealed or submitted to a vote of the City's electors. Frazier informed Residents and the board of aldermen that the petitions were not sufficient because the Ordinances were not subject to referendum under the City's charter.

Thereafter, Residents filed their petition seeking a writ of mandamus to compel Frazier to certify the referendum petitions as sufficient, and to compel the City to either repeal the Ordinances or submit them to a vote of the City's electors. Residents also sought a declaratory judgment that the Ordinances were subject to referendum under the City's charter. The developer, WORP/CA Clayton, LLC and The Crossing in Clayton Redevelopment Corporation (collectively "Intervenors") were granted leave to intervene in the lawsuit.

4

All parties filed cross-motions for summary judgment. A hearing was held on the cross-motions on June 9, 2015. On June 17, 2015, the trial court granted the City's motion for summary judgment, holding that the three ordinances "are not subject to referendum under Article XII, [Section] 2 of City's charter, or any other provision of City's charter" and that "Residents have not established that they are entitled to the issuance of a writ of mandamus under the provisions of City's charter." Residents' motion for summary judgment was denied, and Intervenors' motion for summary judgment was dismissed as moot. Residents now appeal.

## Standard of Review

Our review of the summary judgment is essentially de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). Accordingly, we need not defer to the trial court's order granting summary judgment. ITT Commercial Fin., 854 S.W.2d at 376. We "review the record in the light most favorable to the party against whom judgment was entered." Id. We "accord the non-movant the benefit of all reasonable inferences from the record." Id. However, facts contained in affidavits or otherwise in support of the party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. Id. Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. Id.

## Passage of Ordinances

In Point I, Residents argue that the trial court erred in granting summary judgment in favor of the City on the ground that the Ordinances were not subject to referendum because they

were not passed on the day of their introduction as provided in Article II, Section 8 of the City Charter. We disagree.

Article XII (Initiative, Referendum, and Recall), Section 2 (Referendum) of the City Charter provides that:

> The electors shall have power to approve or reject at the polls any ordinance passed by the board of aldermen, or submitted by the board to a vote of the electors, except the following: ordinances passed on the day of their introduction as provided in the second paragraph of Section 8 of Article II of this charter, ordinances levying taxes, and ordinances for the issuance of special tax bills. Such power shall be known as the referendum.

Residents contend that the Ordinances were not passed on the day of their introduction because they were on the agenda for the September 9, 2014, meeting of the board of aldermen, there was "lengthy consideration" of the bills at this meeting and that, at the conclusion of the meeting and public hearing on September 9, 2014, a motion was made to table the bills. Residents argue that the Ordinances were therefore "introduced" on September 9, 2014, and passed on September 23, 2014, and thus not exempted from referendum.

Our review of the minutes from the September 9, 2014, and September 23, 2014, meetings reveal, contrary to Residents' contentions, that the bills were not introduced until September 23, 2014. [3]

---

[3] Section 105.170 of the Municipal Code of the City of Clayton sets forth a very specific procedure for the introduction of bills and provides as follows:

    A.      Any member of the Board may introduce a bill by securing recognition from the Chairman and stating that he/she desires to introduce Bill No._____. If copies of the bill have not previously been supplied to members, each member shall be given a copy at the time the bill is introduced. The bill shall be read in full if two (2) members of the Board so request.

    B.      The member introducing a bill may move that the bill be considered for possible amendments and be placed on the calendar for consideration on final passage at the next meeting of the Board, with the exception of amendments in substance as provided in Section 8, Article II of the

On September 9, 2014, the board of aldermen conducted the statutorily required public hearing to amend its zoning ordinances, which included a presentation by the developers and an opportunity for the board members to ask questions about the Tower. The public was also given opportunity to comment on the Tower plans. There was no discussion about the merits of the bills or any indication that a bill was being formally "introduced" at the September 9, 2014, meeting. At the conclusion of the public hearing, at which various concerns and questions were raised, the issue of the proposed Tower was referred back to the City Plan Commission.

On September 23, 2014, the board of aldermen reconvened. The minutes of this meeting indicate that one of the aldermen secured recognition from the chair to introduce each of the bills and that the mayor moved that each of the bills be considered for final passage on the day of their introduction. For each bill, the board of aldermen unanimously agreed to proceed with the vote for final passage on the day of the particular bill's introduction. As the board of aldermen complied with the applicable statutes and municipal ordinances, the trial court properly determined that the Ordinances were introduced and passed on September 23, 2014, and were therefore excluded from referendum under Article XII, Section 2 of the City Charter.

Moreover, the trial court properly determined that Ordinance No. 6341 is not subject to referendum under the City Charter because it was passed on the day of its introduction by the affirmative vote of all members of the board of aldermen. Article XII, Section 2 of Clayton's charter exempts from referendum "ordinances passed on the day of their introduction as provided in the second paragraph of Section 8 of Article II of this charter…." Paragraph 2 of Section 8 of Article II of the City Charter provides:

All bills shall be called up for consideration at least twice, and at least one

Charter, or he/she may move that the bill be considered for final passage immediately.

7

week shall elapse between the time a bill is introduced and its final passage, except that bills may be passed on the day of their introduction by the affirmative vote of all members of the board who are present.

Residents read the City Charter to require a unanimous vote for final passage rather than a unanimous vote on a motion to consider a bill for final passage on the day of introduction. We are not persuaded by this interpretation.

A review of the minutes from the September 23, 2014, meeting reflect that the mayor moved that Bill No. 6467 (later Ordinance No. 6341) be considered for final passage at this meeting and that that motion passed unanimously. The minutes further reflect that, on the question of final passage of Bill No. 6467, Alderman Harris voted "nay," while all other aldermen voted "aye." Therefore, the vote on the motion to consider Bill No. 6467 for final passage on the day of its introduction was unanimous, while the vote for final passage was not. Read in context, the unanimity requirement permits one member of the board to delay consideration of a bill for passage for one week, not as Residents argue, permit one member of the board to defeat a bill outright. The City Charter's provisions specifying the method of tabulating the necessary votes for final passage of a bill confirms that it is unanimity for immediate consideration of passage, rather than unanimity in the vote on passage, that is required. Section 6 of Article II of the City Charter provides, "[t]he affirmative vote of a majority of the members of the board shall be necessary to adopt any ordinance, resolution or motion." [Emphasis added.] Section 8 of Article II simply modifies the procedure for adoption of a bill on the date of its introduction. All present members of the board of aldermen must agree to proceed with the vote for a final passage on the day of the bill's introduction. Otherwise, it is necessary to wait at least one week. Section 8 of Article II does not change the threshold of votes necessary for passage. The trial court properly determined that Ordinance No. 6341 is not

8

subject to referendum under the City Charter because all members of the board of aldermen agreed to proceed with a vote for final passage on the day of Bill No. 6467's introduction, and then passed the bill into law by a vote of six to one.

Finally, the trial court properly determined that Ordinance No. 6341 is not subject to the referendum under the City Charter because it levies a tax. Article XII, Section 2 of the City Charter exempts from referendum "ordinances levying taxes…." Residents argue that Ordinance No. 6341 did not levy taxes, but rather abated taxes, and is therefore not subject to referendum. "The word 'levy' is 'the formal and official action of a legislative body invested with the power of taxation determining and declaring that a tax of a certain amount or of a certain percentage on value shall be imposed on persons and property subject to the tax.'" Adams v. Friganza, 344 S.W.3d 240, 250 (Mo. App. E.D. 2011) (quoting 84 C.J.S. Taxation Section 462 (2011)). Here, as Friganza suggests, the term "ordinance levying taxes" in the City Charter encompasses the entire process of determining appropriate levels of taxation of property, not simply the narrow act of imposing taxes.

Article IV of the development agreement provides that the developer will make payments in lieu of taxes ("PILOTS") based on 50% of the assessed valuation of the property for the first ten years, and payments based on 50% of the fair market value for the following ten years. Article IV of the development agreement, negotiated by the developer and Clayton, determines the rate at which the property will be taxed. Ordinance No. 6341, which approved the development agreement, is an exercise of the city's power to impose and fix the amount of taxes on the Tower. Therefore, Ordinance No. 6341 levies taxes and is not subject to referendum under the City Charter. Point I is denied.

9

Ordinance No. 6341

In Point II, Residents argue that the trial court erred in granting summary judgment in favor of the City because Ordinance No. 6341 is legislative, as opposed to administrative in nature, and is therefore subject to referendum under Missouri law. We disagree.

"It is the general rule that initiative and referendum are applicable only to ordinances which are legislative in character and not applicable to those dealing with administrative matters. Anderson v. Smith, 377 S.W.2d 554, 557 (Mo. App. 1964); Carson v. Oxenhandler, 334 S.W.2d 394, 399 (Mo. App. 1960). Legislative acts are said to be permanent and general and presenting a new policy or plan. State ex rel. Whittington v. Strahm, 374 S.W.2d 127, 130 (Mo. banc 1963); Anderson, supra, at 558. Those subjects temporary or special in nature or that merely pursue on existing plan are deemed administrative. Whittington, supra, at 130 and Anderson, supra, at 558." State ex rel. Hickman v. City Council of Kirksville, 690 S.W.2d 799, 802 (Mo. App. W.D. 1985).

Here, contrary to Residents' contention, Ordinance No. 6341 is administrative as its purpose is to effectuate the legislative policy established by Ordinance No. 6328, which was approved by Clayton's board of aldermen on July 22, 2014. Ordinance No. 6328 declared that the property on which the Tower would be constructed was blighted, approved a development plan which included tax abatement, and authorized City staff to negotiate a development agreement. The determinations set forth in Ordinance No. 6328 that the property upon which the Tower would be constructed was blighted, that its redevelopment was in the best interest of the City, and that a grant of tax abatement was necessary to achieve that end, are legislative acts declaring the policy of the City. See BHA Group Holding, Inc. v. Pendergast, 173 S.W.3d 373, 376 (Mo. App. W.D. 2005) (determination of blight, as contained in Urban

10

Redevelopment Corporations Law of Chapter 353, is a policy decision with roots in the Missouri Constitution and, therefore, is legislative in nature).

Residents' main argument is that Ordinance No. 6341 is legislative, not administrative, and therefore subject to referendum because Ordinance No. 6328 expressly reserved a decision on tax abatement until Ordinance No. 6341. Therefore, they contend, Ordinance No. 6341 was legislative to the extent it, rather than Ordinance No. 6328, authorized tax abatement. We find this argument meritless.

As stated above, Ordinance No. 6328 approved a development plan for the property upon which the Tower would be constructed. The development plan expressly states "[r]eal property tax abatement will be granted pursuant to a development agreement between the City and the Developer." The board of aldermen did not reserve a decision on tax abatement. The board clearly stated its intent to grant tax abatement in Ordinance No. 6328. Public comment was received on the topic of tax abatement at the meeting on July 22, 2014. Ordinance No. 6328 set the City's policy of using tax abatement to incentivize development in this area, as clearly articulated by the Master Plan. Because Ordinance No. 6341 approved a contract with the developer to effectuate the City's previously adopted policies, it is administrative and therefore not subject to referendum. Point II is denied.

## Laches

In Point III, Residents argue that the trial court erred in granting summary judgment in favor of the City "to the extent that" its decision was based on Intervenors' laches argument. We disagree.

Here, the laches argument asserted by Intervenors did not form the basis of the trial court's judgment as Intervenors' motion for summary judgment was dismissed as moot. In its

11

judgment, the trial court stated the following as the basis for its decision: "[t]he Court finds and declares that Clayton Ordinance Nos. 6339, 6340, 6341 are not subject to referendum under Article XII, [Section] 2 of City's charter or any other provision of City's charter." Nowhere does the trial court mention the referendum being unavailable because of laches. In fact, as Residents themselves admit, the City did not specify laches at all in its motion for summary judgment. "Where a trial court has granted summary judgment without specifying the basis upon which the motion was granted, this court will affirm the grant of summary judgment under any appropriate theory. Further, a trial court's order is presumed to have based its decision on the grounds specified in respondents' motion if the trial court's order does not set forth its reasoning." Cent. Missouri Elec. Co-op. v. Balke, 119 S.W.3d 627, 635 (Mo. App. W.D. 2003). Here, the trial court specified the basis for its ruling and, furthermore, the laches argument is not properly before this court. Point III is denied.

## Conclusion

The judgment is affirmed.

_Mary K. Hoff_

Robert G. Dowd, Jr., Presiding Judge and Kurt S. Odenwald, Judge, concur.